1

**Seth L. Goldstein, S.B.N. 176882**
**2100 Garden Road, Suite H-8**
2  **Monterey, California, 93940**
**Telephone  (831) 372 9511**
3  **Fax          (831) 372 9611**

4  **Attorney for Pamela J. FOX and**
**C.M.R.**
5

6

7                    **UNITED STATES DISTRICT COURT**

8                    **EASTERN DISTRICT OF CALIFORNIA**

9

10

11  **PAMELA J. FOX, ON BEHALF OF**
**HERSELF AND AS NEXT FRIEND TO**         **Case Number: 1:11-at-162**
12  **C.M.R., A MINOR**.
                                          **COMPLAINT FOR DAMAGES**
13                 Plaintiffs,

14        vs.

15  **COUNTY OF TULARE, LETICIA**
**CASTANEDA, ERICA SOTO, RON**
16  **CASTANEDA, JULIA LANGLEY,**              *****JURY REQUESTED***
**CAROL HELDING, JOHN ROZUM,**
17  **STEVEN D. ROGERS and DOES 1 -**
**100,**
18

19                 Defendants.
   _____/
20

        Plaintiffs allege:
21

22                    **JURISDICTION AND VENUE**

23  1.    This court has jurisdiction over the subject matter of this action pursuant to Title 28,

        United States Code Sections 1331, 1343 and 1367.
24

25  2.    Venue is proper in this judicial district because Plaintiffs' injuries, damages and harm,

26        including the violation of Plaintiffs' Civil Rights occurred in this judicial district.

        Further, all of the Defendants reside, are headquartered and conduct business in this

judicial district.

3.    Plaintiffs have complied with the Government Tort Claim Statutes of California, having had the most recent claim denied on October 27, 2010.

## PARTIES

4.    At all times relevant to the facts described herein, Plaintiff, Pamela FOX was and is the mother of the minor, C.M.R. in this action. Defendants are fully aware of C.M.R.'s identity and suffer no prejudice as the result of C.M.R.'s pseudonymous filing. She sues in her individual capacity and as Next Friend of C.M.R., seeking the appointment of a Guardian Ad Litem.

5.    At all times relevant to the facts described herein, Plaintiff C.M.R. is a minor female child born in 2005.   She is the daughter of Plaintiff Pamela FOX and Defendant Steven D. ROGERS. She sues herein by and through her Next Friend, Plaintiff Pamela FOX.

6.    At all times relevant to the facts described herein, Defendant County of Tulare, (hereinafter COUNTY) was and is now a public entity organized and existing under the laws of the State of California, engaged in the provision of social welfare services in the County of Tulare, State of California. Defendant COUNTY is responsible for the provision of social services in the form of "Child Welfare Services" (heretofore, CWS), charged with the responsibility of the investigation and adjudication of child abuse reports made to its own agency and that in conjunction with that of law enforcement, primarily the Tulare County Sheriff's Department (TCSD) within the County of Tulare.  Defendant COUNTY Seat is located at Visalia, California.

7.    At all times relevant to the facts described herein, Defendant Lt. Ron CASTANEDA is and was an adult male and resident of the State of California.  Defendant Ron CASTANEDA was at times herein mentioned formally employed as a lieutenant for the Sheriff's Department for Defendant COUNTY. He is sued in his individual capacity.

8.    At all times relevant to the facts described herein, Defendant Leticia CASTANEDA is and was an adult female and resident of the State of California. Defendant Leticia CASTANEDA was at all times herein mentioned employed as a Supervising Social

Worker for Defendant COUNTY. She is sued in her official and individual capacities.

9.   At all times relevant to the facts described herein, Defendant Erica SOTO is and was an adult female and resident of the State of California. Defendant Erica SOTO was at all times herein mentioned employed as a Social Worker for Defendant COUNTY. She is sued in her official and individual capacities.

10.  At all times relevant to the facts described herein, Defendant John ROZUM is and was an adult male and resident of the State of California. Defendant John ROZUM was at all times herein mentioned employed as a Chief Deputy County Counsel for Defendant COUNTY. He is sued in his official and individual capacities.

11.  At all times relevant to the facts described herein, Defendant Julia LANGLEY is and was an adult female and resident of the State of California. Defendant Julia LANGLEY was at all times herein mentioned employed as a Deputy County Counsel for Defendant COUNTY. She is sued in her official and individual capacities.

12.  At all times relevant to the facts described herein, Defendant Carol HELDING is and was an adult female and resident of the State of California. Defendant Carol HELDING was at all times herein mentioned employed as a Deputy County Counsel for Defendant COUNTY. She is sued in her official and individual capacities.

13.  At all times relevant to the facts described herein, Defendant Steven D. ROGERS, is and was the father of the minor, Plaintiff C.M.R. in this action. Defendant Steven D. ROGERS, is an adult male and a resident of the State of California, County of Tulare.

14.  Plaintiffs do not know the true names and capacities of the defendants sued herein as DOES 1 through 100. Plaintiffs are informed and believes and on that basis alleges that said DOES are each responsible in some manner for the injuries plaintiffs sustained herein and that each of the defendants is the agent, servant, or employee of the others in doing the acts complained of herein and acted within the scope of that agency or employment. Plaintiffs will amend their complaint to allege the identities of the DOES when ascertained. In doing the things herein alleged, the defendants, and each of them, acted as the agent, servant, employee and in concert with each of the remaining

defendants.

## INTRODUCTION

15. This action is based upon conduct by Defendants constituting a conspiracy to deprive Plaintiffs of their constitutional liberty rights to parent and associate with a child as enumerated in *Troxel v Granville*, (2000) 530 U.S. 57, 120 S.Ct. 2054; rights to due process pursuant to *Martirosyan v. Immigration and Naturalization Service,* 242 Fed 3rd 905 (10th Cir. 2001); Title 42 U.S.C. Section 1983, and 42 U.S.C. Section 1985 both for interference, deprivation and conspiracy to interfere with Plaintiffs' rights to due process and equal protection under the laws.

16. This conspiracy began when Defendant Steven D. ROGERS and his close friend in the Sheriff's Department, then Sheriff's Lieutenant, Defendant Ron CASTANEDA, began to falsify reports of child abuse against Plaintiff Pamela FOX.

17. It surfaced in earnest after Defendant Ron CASTANEDA left the TCSD following a personnel complaint filed by Plaintiff Pamela FOX reporting Defendant Ron CASTANEDA as having committed a misdemeanor crime by accessing confidential law enforcement records to benefit Defendant Steven D. ROGERS, as well as possibly planting drugs in Plaintiff Pamela FOX's boyfriend's car.

18. The manifestations of this conspiracy first became apparent when Plaintiff C.M.R. revealed that she was being sexually abused by Defendant Steven D. ROGERS in July, 2008. Confederates of Steven D. ROGERS, Ron CASTANEDA, Castaneda's sister-in-law, Supervising Social Worker, Defendant Leticia CASTANEDA and her subordinate, Defendant Erica SOTO, suppressed the reports and misdirected the other professionals involved in the case, including the sheriff's investigators, Family Court Service investigators, and the Family Court Judges themselves so as to assure Defendant Steven D. ROGERS retained custody of Plaintiff C.M.R.

19. Starting in July, 2009, once the social workers' previous conduct came to light in Plaintiff Pamela FOX's Family Law litigation, County Counsel Defendants Julia LANGLEY, Defendant Carol HELDING and Defendant John ROZUM, began a

concerted effort to cover up the misconduct by blocking and preventing Plaintiff Pamela FOX's access to the facts in the form of reports and evidence described below prior to the various trial dates set in the matter.

20. As a result of Defendant's conduct, each and every one of them, Plaintiff Pamela FOX's custody of Plaintiff C.M.R. was taken away in July, 2009, only to be later restored in September, 2010.

21. This suit for damages follows.

## STATEMENT OF FACTS

22. The California Penal Code defines the type of dispositions Child Protective Service and Law Enforcement agencies use to classify the conclusions they draw after completing a child abuse investigation. See Penal Code Section 11165.12.

23. "Unfounded" means the reported child abuse was found not to have occurred. PC 11165.12(a)

24. "Inconclusive" means that the reported child abuse was unable to be established one-way-or-the-other.  PC 11165.12( c)

25. The standard of establishing the existence of child abuse is the Preponderance of Evidence standard. PC  11165.12(b)

26. The following events and pattern of discrimination against Plaintiff Pamela FOX lead up to the current state of affairs giving rise to the causes of action that follow.

27. On or about, September of 1997, Ramon Estrada, father of Plaintiff Pamela FOX's oldest daughter, J.E., was arrested for smashing in a front window of their home to climb in after he was being turned out due to his committing acts of domestic violence. At the time he broke the window, J.E. and Plaintiff Pamela FOX's son from another relationship, C.N., were sitting on the couch immediately inside the window. The glass from the window cut the children and Mr. Estrada was arrested for a child abuse charge

for hurting the children by way of the cuts sustained as a result of the broken glass and other charges pertaining to domestic violence.

28. Mr. Estrada was also charged with being on drugs.

29. Subsequently he was convicted of misdemeanor vandalism and the child abuse charge.

30. Some weeks previous to the broken window incident, as described above, Plaintiff Pamela FOX had walked into the front room finding Mr. Estrada seated on the couch with J.E. and C.N. on either side of him, watching hard-core pornography depicting a sex act in full view of the two children. This was eventually reported to CWS later by therapists for the children. However, CWS never interviewed anyone in this matter. CWS made an "inconclusive" disposition, stating that they were unable to locate the family, despite the fact that CWS had Plaintiff Pamela FOX's correct address and her son attended school across the street from the home.

31. Defendant COUNTY's CWS files falsely show that on January 6, 1998, Plaintiff Pamela FOX reported that her daughter, J.E., told her that Mr. Estrada, had touched her on the vagina. It is inaccurate. Neither the child, J.E. nor Plaintiff Pamela FOX ever made that statement. This incident was never investigated by CWS.  Plaintiff Pamela FOX did not report this incident, someone else did.

32. On August 2, 1999, C.N. supposedly complained to someone that his step-mother had been pinching and spanking him. This was reported to CWS. Plaintiff Pamela FOX did not make this report. CWS ruled the incident "inconclusive" stating that the minor simply didn't want to visit his father. It was actually J.E., not C.N. who made this complaint.

33. On or about October 12, 2006, a complaint of general neglect was made to CWS of abuse about Plaintiff C.M.R. There is no documentation of any investigation nor is

there any identification as to who made the complaint, who the complaint was about and there is no disposition.

34. On April 4, 2007, a suspected child abuse report was made to CWS about Plaintiff C.M.R. However, there was no investigation conducted by CWS. There is no reference to who made the report or what the disposition was.

35. Defendant Steven D. ROGERS had a close personal friend in TCSD, Defendant Ronald CASTANEDA who was then a lieutenant.

36. On or about April 24, 2007, Defendant Steven D. ROGERS contacted Defendant Ron CASTANEDA, who was working for TCSD in a narcotics assignment.

37. Defendant Steven D. ROGERS told Defendant Ron CASTANEDA that he believed his daughter was being molested by Plaintiff Pamela FOX's boyfriend, Edward Skelton.

38. Defendant Ron CASTANEDA told Defendant Steven D. ROGERS to take the child to a doctor for examination. He told Defendant Steven D. ROGERS that if a doctor determined that the child had been sexually assaulted, that Defendant Steven D. ROGERS should notify the Sheriff to initiate a criminal investigation.

39. Defendant Ron CASTANEDA then improperly and illegally accessed the National Crime Information Center (NCIC) to perform both a criminal history check and also illegally obtain information about Mr. Skelton's driving record and car registration.

40. Defendant Ron CASTANEDA filed a report on April 24, 2007, that seemingly tried to justify Defendant Steven D. ROGERS's taking Plaintiff C.M.R. to Urgent Care and to the hospital for the rape examinations. Defendant Ron CASTANEDA committed another misdemeanor by failing to file a mandatory child abuse report with the Department of Justice after receiving the report of potential child abuse made by Defendant Steven D. ROGERS.

41. Defendant Steven D. ROGERS took Plaintiff C.M.R. to Urgent Care and was seen by a doctor on April 25, 2007, insisting that the child had been molested by Plaintiff Pamela FOX's then boyfriend, Edward Skelton. The doctor told Defendant Steven D. ROGERS, after he did a brief examination of the child, that there was no evidence nor cause to believe the child had been molested. Defendant Steven D. ROGERS insisted on a full rape examination. At Defendant Steven D. ROGERS' insistence, the doctor did a full rape exam on Plaintiff C.M.R. including invasive vaginal swabbing. Upon finding that the lab results were "negative," Defendant Steven D. ROGERS cancelled Plaintiff C.M.R.'s follow-up appointment.

42. On May 3, 2007, eight days later, Defendant Steven D. ROGERS took Plaintiff C.M.R. to Sierra View Hospital. Defendant Steven D. ROGERS mislead them to believe that the doctor at Urgent Care and the TCSD had made the referral. Defendant Steven D. ROGERS insisted that yet another rape examination be conducted on Plaintiff C.M.R. which was performed at his request. This was eventually investigated by TCSD. CWS ruled that these allegations were "unfounded."

43. The CWS file concerning Plaintiff Pamela FOX contained a note between the pages of documents between the dates of August 2, 1999, and June 8, 2007, written by an unknown author, with the following quote "really pissy custody."

44. On June 8, 2007, Defendant Steven D. ROGERS reported to CWS that Plaintiff Pamela FOX's boyfriend was possibly molesting Plaintiff C.M.R.. That report was also declared "unfounded."

45. On June 14, 2007, Tulare County Social Worker, Lung Vang, told Plaintiff Pamela FOX that she "needs to protect her children if anything may be happening to them."

46. In August of 2007, Plaintiff Pamela FOX and her attorney, James Christiansen, made a

personnel compliant to the TCSD regarding the illegal and improper conduct by Defendant Ron CASTANEDA.

47.   On or about September 2007, after an investigation was conducted by Internal Affairs, Defendant Ron CASTANEDA took an early retirement from TCSD.

48.   On October 17, 2007, someone reported that Plaintiff Pamela FOX had said that Plaintiff C.M.R. was scrubbing her vagina and said "it's dirty." It is unknown who reported this incident to the authorities. CWS file reports show that Plaintiff Pamela FOX did not report it to TCSD or CWS. The CWS's written disposition was "unfounded, appears to be custody issue."

49.   Defendant Steven D. ROGERS filed for custody in the Family Law Court on October 18, 2007, the day after the allegations had been reported by the "unknown person", not identified in the Child Welfare Services file.

50.   On October 18, 2007, a Family Law judge, in Tulare County Superior Court Case # 05-216719, hearing that Defendant Steven D. ROGERS took Plaintiff C.M.R. for unwarranted medical examinations, issued an order prohibiting Defendant Steven D. ROGERS from taking the child to the doctor.

51.   On July 23, 2008, Plaintiff C.M.R. told Plaintiff Pamela FOX and Plaintiff Pamela FOX's sister, Rhonda Hill, that "Daddy pops my pee pee." She demonstrated by laying on her back and sticking her fingers in and out of her vagina. In addition, the child told Plaintiff Pamela FOX that Defendant Steven D. ROGERS photographed her naked, demonstrating by taking off her clothes, laying down on her back, putting her legs up over her head, exposing her genitals to Plaintiff Pamela FOX.

52.   CWS and TCSD investigated. Defendant Steven D. ROGERS was interviewed during the course of this investigation by Lydia Suarez, a social worker, and he denied that he

had ever taken the child for rape examinations. He claimed that "(Plaintiff) Pamela FOX had been planning this for months because an unknown co-worker contacted him" and said that she was going to be making these allegations.

53. On July 23, 2008, Sheriff's Detective Terry Titus prepared an affidavit for a Search Warrant related to TCSD investigation case number 08-10615. [This was never revealed to Plaintiff Pamela FOX until her Family Law attorney conducted a review of the file in 2009 and filed a motion in the criminal court to release the Search Warrant and it's accompanying documents.] Detective Titus indicated that he believed a crime was committed consisting of production of child pornography involving Plaintiff C.M.R. and that there would be evidence of that on Defendant Steven D. ROGERS's computer.

54. The Warrant was served on July 25, 2008. The computer was examined by TCSD. The Return was filed on August 20, 2008. TCSD found "260 images of prepubescent children depicted in a sexually explicit manner."

55. No charges were filed related to that case.

56. Megan Boersma, the social worker assigned by CWS investigating the child molestation allegations, concluded that Plaintiff Pamela FOX had coached Plaintiff C.M.R. into making the false sexual abuse allegations. Ms. Boersma reported that the child seemed to repeat, verbatim, the same things as Plaintiff Pamela FOX.

57. However, a female sheriff's deputy who interviewed the child at Defendant Steven D. ROGERS home, and the child made specific statements indicating that her father had sexual abused her. Plaintiff C.M.R.'s statements were different than what had been said to and by Plaintiff Pamela FOX.

58. Although the female sheriff's deputy believed Plaintiff C.M.R.'s statements about

sexual abuse, CWS concluded that this incident was "inconclusive."

59.  Defendant Steven D. ROGERS is identified by CWS as the perpetrator of a sexual abuse allegation dated August 14, 2008, referral ID number 1402-8879-3994-8057307. There is no reference as to who the reporting party was, what the specifics of the allegations were or what the disposition was. No action was taken by CWS against Defendant Steven D. ROGERS.

60.  On October 1, 2008, Plaintiff Pamela FOX started a child support action through the Department of Child Support Services.

61.  On October 12, 2008, Defendant Steven D. ROGERS came in to CWS office with Plaintiff C.M.R. and reported to Patricia Negrette that the mother "barely had enough food."

62.  On October 13, 2008, Defendant Steven D. ROGERS is also identified by CWS as the perpetrator where the allegation is sexual abuse, sibling abused. The referral ID number is 164-2581-8046-0028359. There are three separate entries under the same case number and date. There was no identification of who made these separate reports, what the reports were about, other than previously stated and no disposition.

63.  CWS progress notes reflect that "the reporting party called to report Plaintiff Pamela FOX reports child Plaintiff C.M.R. has made sexual comment and expressed sexually acting out behaviors." It is unknown who made this report and there is no disposition. There was no investigation.

64.  CWS referral notes reflect that the "reporting party states that the daughter, C.M.R., was molested by Steven Rogers." The referral was "evaluated out" due to the allegations being reported on July 23, 2008. It is unknown who made this report. The referral ID number is 07075-4072-9918-0049183.

65.  The reports state that C.M.R. told Plaintiff Pamela FOX while bathing that "Daddy tickled my pee pee with his fingers again." It is unknown who reported this incident.

66.  An investigation was conducted by the Sheriff's Department.

67.  On October 31, 2008, Defendant Steven D. ROGERS made a follow up call and reported to the same worker at CWS that Plaintiff Pamela FOX was unable to care for Plaintiff C.M.R. because she didn't have enough food, the home had no heat and that "Plaintiff Pamela FOX spends her child support money on vacations and doing her nails." The CWS reports that "the parents have custody issues."

68.  On November 6, 2008, Defendant Erica SOTO reported to TCSD that Plaintiff C.M.R. had been molested by Defendant Steven D. ROGERS. On November 12, 2008, the investigating officer, Deputy E. Holt, spoke with Defendant Erica SOTO who told him that Plaintiff Pamela FOX had reported this incident.

69.  Defendant Erica SOTO told Deputy Holt that Plaintiff Pamela FOX had made four prior false allegations against Defendant Steven D. ROGERS.

70.  During the course of the investigation of that incident, Defendant Steven D. ROGERS, in violation of California Family Code Section 3011, provided a evaluation performed by Ronald Gandolfo, Ph.D., which was a confidential report provided to the Family Court. As a result of Defendant Erica SOTO's influence, that investigation was closed as "unfounded." Contrary to Defendant Erica SOTO's assertions, Plaintiff Pamela FOX did not report this incident to the TCSD or CWS until *they* came to speak with her.

71.  On November 12, 2008, Defendant Steven D. ROGERS reported to CWS that "C.M.R. stated his (sic) mother curses." He complained that "C.M.R. stated she was afraid to go home because the mother washes her mouth out with soap."

72.  Defendant Steven D. ROGERS reported to CWS that Plaintiff C.M.R. "disclosed she

has walked in on her seventeen year-old brother having sex with his girlfriend and her

mother having sex with one of her boyfriends."

73.    Defendant Steven D. ROGERS reported that J.E. will "confirm this occurred, but do

not ask the children in front of the mother." Defendant Steven D. ROGERS states "J.E.

is scared shit-less of her mother (Plaintiff Pamela FOX)."

74.    On December 2, 2008, Defendant Steven D. ROGERS reported to CWS that Plaintiff

C.M.R. told him that "Mommy says Daddy touched my pee pee."

75.    Despite the order in place that he not do so, Defendant Steven D. ROGERS then took

the child to the hospital subjecting her to another examination.

76.    On December 3, 2008, social work team leader, Defendant Leticia CASTANEDA,

sister-in-law to Defendant Steven D. ROGERS's close friend, Defendant Lieutenant

Ronald CASTANEDA, TCSO, called a meeting with Plaintiff Pamela FOX and

Defendant Steven D. ROGERS.

77.    Defendant Leticia CASTANEDA and Defendant Erica SOTO, divulged, in the presence

of Defendant Steven D. ROGERS, the contents of the confidential CWS files relating to

the domestic violence investigation involving Ramon Estrada in 1997 and a claim that

Plaintiff Pamela FOX's older daughter, J.E. was being pinched by her step-mother,

claiming the allegations were false, when in fact, they were true.

78.    The result of this meeting was that Defendant Steven D. ROGERS, who otherwise

would be prohibited from learning of these facts, now knew about the confidential

incidents and was provided with false information that he later used to help him in his

quest for custody of Plaintiff C.M.R.

79.    During this meeting, Defendant Leticia CASTANEDA accused Plaintiff Pamela FOX

of making false accusations against the fathers of Plaintiff Pamela FOX's other children

as far back as 1998.

80. At this meeting, Defendant Leticia CASTANEDA told Plaintiff Pamela FOX that she had more power than any judge and threatened to take C.M.R. away from Plaintiff Pamela FOX.

81. The CWS disposition of December 3, 2008, for this case is "unfounded."

82. On December 4, 2008, Defendant Erica SOTO interviewed Ramon Estrada. He claimed that Plaintiff Pamela FOX had made false allegations against him, stating that he was arrested because she made a false report of domestic violence. He neglected to tell her that he was convicted on that arrest. She never followed up to confirm or refute his claims.

83. On December 4, 2008, Defendant Leticia CASTANEDA and Defendant Erica SOTO sought to file a petition in Juvenile Court to remove Plaintiff C.M.R. from Plaintiff Pamela FOX, talking with Defendant John ROZUM by phone about it.

84. On December 8, 2008, Defendant Erica SOTO interviewed Plaintiff Pamela FOX's daughter, J.E. a minor.  J.E. stated that she had been watching Plaintiff C.M.R. "put things inside of herself." J.E. further described that Plaintiff C.M.R. would take her toy horses and put them inside her vagina. She stated that this conduct would occur after the child had returned from visiting her Defendant Steven D. ROGERS.

85. Furthermore, J.E. told the social worker that J.E. was told to sleep in Defendant Steven D. ROGERS's bed when he babysat the children. CWS did nothing to protect Plaintiff C.M.R. in this investigation.

86. On December 15, 2008, Defendant Steven D. ROGERS came to the CWS office, stating that he wanted to file for custody of Plaintiff C. R. because he did not want Plaintiff Pamela FOX to continue to report allegations against him.

87. On February 9, 2009, someone reported to CWS that Plaintiff C.M.R. said "My daddy touches my pee pee all the time." .

88. On March 1, 2009, Plaintiff Pamela FOX brought C.M.R. to the hospital because she had observed what she thought was another possible urinary tract infection.

89. On March 2, 2009, Defendant Leticia CASTANEDA again became involved in the case.

90. On March 2, 2009, social worker Nick Salcito reported that "There was a court order last time from the judge where mother (Plaintiff Pamela FOX) was told that if she makes another allegation or uses the child to make one, the judge would give custody to the father (Defendant Steven D. ROGERS)." This is false. There is no such order.

91. Defendant Steven D. ROGERS provided false information to the social workers regarding the aforementioned "Order."

92. Also on March 2, 2009, social worker Salcito reported that the TCSD had sought a complaint against Plaintiff Pamela FOX for making four false allegations but that the District Attorney would "not touch it."

93. On the same date, Salcito reported that "this worker asked father if the judge told mother to avoid taking her child to make false allegations. Father stated that the judge told her that [not to make reports] .... Father also provided copies of the times Mother has taken child to the doctor without his consent-these copies are attached to this referral." [No such documents were found in the CWS file.] Worker Salcito also reported that Detective John Lee [the sheriff's investigating officer] "stated that all this process of Mother making child to make allegations started when Father tried to modified the child support payment." This is untrue.

94. Lourdes (Lou) Dawson, the Family Court Mediator assigned to the case, sent a fax to

Defendant Leticia CASTANEDA requesting "I already have information from 1998 to August 14, 2008. Need information after 8-14-08 to present. Focus is on (Plaintiff) C.M.R."

95. On April 7, 2009, social worker, Defendant Erica SOTO, reported she "received fax requests from Lou Dawson of Family Court Services. Ms. Dawson is requesting the CWS records in regards to the child (Plaintiff) C.M.R.. Per team leader (Defendant) Leticia CASTANEDA this social worker can provide Dawson with CWS records."

96. Lourdes Dawson submitted a report for the hearing on May 12, 2009, dated April 17, 2009, stating that:

> "the undersigned contacted Child Welfare Services at the Sheriff's Department regarding this matter. The parents are well known to both agencies and the undersigned received a great deal of information from both agencies...the social worker working with the family and her supervisor, Leticia, indicated to the undersigned that Child Welfare Services and law enforcement are very frustrated with the situation in this case. According to Child Welfare Services the mother continues to take the child to doctors and the hospital and alleges sexual molest by the father. Child Welfare Services claim they receive the same calls over and over again alleging that the father is sexually molesting the child. They said the calls are currently coming from other professional people whom the mother informs that the child claims that the father touched her inappropriately such as the child's therapist."

> "The social worker stated that the mother uses the system in an effort to get other professionals to make referrals to Child Welfare Services regarding the same sexual molestation allegations...There have been a number of referrals to Child Welfare Services not only regarding [C.M.R.] the child at issue, but the mother has also made similar allegations against her 14 year old daughter's father beginning in 1999 and continuing for several years...A detective from the Tulare County Sheriff's Department was contacted regarding this matter. The Detective stated that he has interviewed both parents on many occasions. He said mother insists the child has been sexually molested by the father and has made certain allegations against the father that have proven to be untrue...Law enforcement feels that the mother is mentally abusing the child by constantly questioning her about

inappropriate touching by the father...The detective stated that the mother has a history of making allegations of her other children's biological fathers...Medical reports also seem to reflect that the sexual molest has not occurred but have diagnosed the child with urinary tract infections and diaper rash."

97.    On April 6, 2009, in another undated report for the same hearing, Ms. Dawson recommended physical custody to be with the Defendant Steven D. ROGERS and that Plaintiff Pamela FOX "shall have" supervised visitation.

98.    On April 9, 2009, Lou Dawson from Family Court Services contacted Defendant Erica SOTO regarding the family law investigation that she was conducting. Defendant Erica SOTO "explained that the mother has a history of making sexual abuse allegations towards Father, Mr. ROGERS, which have been unfounded by TCSD." The social worker indicated that if a visitation supervisor were to be appointed, the person should be supervised by "a designee that does not have a relationship with the mother based on the history of family members harassing (Defendant) Leticia CASTANEDA and social worker Dana Harness." This is untrue - Plaintiff Pamela FOX did not harass the social workers. As noted herein, she did complain through channels about their unethical and unfair conduct.

99.    On May 12, 2009, a trial was held in the Family Court. The hearing resulted in no findings of sexual abuse and no findings that Plaintiff Pamela FOX made malicious false allegations, as was alleged by Defendant Steven D. ROGERS. C.M.R. was taken from Plaintiff Pamela FOX and she was granted limited visitation without restriction. Defendant Steven D. ROGERS was granted primary physical custody. C.M.R. was forced to live with Defendant Steven D. ROGERS immediately thereafter.

100.   On July 14, 2009, Lizbeth Lerma, Plaintiff C.M.R.'s therapist reported to CWS that the Plaintiff Pamela FOX had come seeking her assistance on what to do about what

Plaintiff C.M.R. had told her on July 11, 2009, providing the social worker with a detailed letter that Plaintiff Pamela FOX had written describing what C.M.R. had told her to assure there were no misinterpretations of what was said by Plaintiff Pamela FOX.

101. Ms. Lerma told CWS that Plaintiff C.M.R. had said that she had touched "her daddy's pee pee" and when the Plaintiff Pamela FOX asked what she meant, Plaintiff C.M.R. showed Plaintiff Pamela FOX by "sticking up her pointer finger and rubbing it up and down."

102. Then Plaintiff C.M.R. said "Daddy rubs my pee pee with his big pee pee."

103. Plaintiff C.M.R. also told Plaintiff Pamela FOX that "Daddy rubs my pee pee with his thumb" and that "Daddy takes down his pants and his shirt, he would have nothing on and no one was home."

104. Ms. Lerma reported that Plaintiff Pamela FOX told her that Plaintiff Pamela FOX would not contact CWS or law enforcement because she was "warned" by CWS about making further reports about abuse to CWS.

105. On July 14, 2009, Deputy J. Zendejas, of TCSD met with Defendant Erica SOTO. Defendant Erica SOTO informed the deputy that Plaintiff Pamela FOX has made repeated false accusations of sexual abuse against Defendant Steven D. ROGERS.

106. Defendant Erica SOTO told the deputy that she and CWS believe that Plaintiff Pamela FOX had "mental problems."

107. When the deputy and Defendant Erica SOTO contacted Defendant Steven D. ROGERS at his home, the deputy described Defendant Steven D. ROGERS as "Steve stated he knew what was going on as soon as he entered the room."

108. Defendant Steven D. ROGERS told the deputy that Plaintiff Pamela FOX had

continued to make false accusations against him.

109.   The deputy closed the case stating that "[Defendant Erica] SOTO said that she did not feel C.M.R. as being sexually abused or that was (sic) at risk of being abused by her father."

110.   Defendant Erica SOTO stated that she was going to contact the Family Court to recommend that the visitation rights for Plaintiff Pamela FOX be suspended due to "possible emotional abuse."

111.   The deputy closed his investigation as "unfounded."

112.   On that same day, on his own initiative, Defendant Steven D. ROGERS took C.M.R. to another medical examination, reporting to CWS that Plaintiff Pamela FOX molested the child. That report was unfounded by CWS.

113.   No action was ever taken against Defendant Steven D. ROGERS for making false reports of abuse against Plaintiff Pamela FOX either by CWS or the Sheriff's Department.

114.   Also on July 14, 2009, Defendant Leticia CASTANEDA and Defendant Erica SOTO, called Plaintiff Pamela FOX to a meeting for an interview. When Plaintiff Pamela FOX told them that she was going to record the conversation, Defendant Leticia CASTANEDA stated "You do and I will sue the hell out of you and you will never see your daughter again!"

115.   When Defendant Steven D. ROGERS filed his Order to Show Cause for custody on July 17, 2009, he filed a declaration wherein he stated that Defendant Erica SOTO told him that the therapist for the child had reported what Plaintiff Pamela FOX had told her, specifically referencing the letter that Plaintiff Pamela FOX had written to the therapist.

116.    Furthermore, Defendant Steven D. ROGERS admitted that he, once again, took the child to a hospital for, yet another, medical examination, claiming that Plaintiff Pamela FOX had molested his daughter.

117.    On July 22, 2009, after a hearing without testimony in the Family Law Court, Plaintiff Pamela FOX was placed on supervised visitation, allowed to see her daughter only twice a week for two hours each.

118.    On July 28, 2009, because Defendant Steven D. ROGERS had come to complain about the report the therapist made, the director of Tulare Youth Service Bureau, Tim Zavala complained to CWS that someone had disclosed the identity of his employee, Therapist Lizbeth Lerma, [whom, by statute, is a mandated child abuse reporter whose identity is confidential when a report is made].

119.    On September 8, 2009, the Family Law judge hearing the Family Law case, released the Family Court Services file (FCS) to the parties. These files are what the mediators and court investigators use to make their recommendations. Among the documents found in the file provided to FCS by CWS are the investigative reports filed by the Sheriff's Department on the aforementioned case number.

120.    Conspicuously missing are any reports pertaining to the discovery and recovery of the child pornography.

121.    Lou Dawson was deposed in the Family Law matter on Dec. 2, 2009, and tesitifed she was never told of the finding of child pornography on Defendant Steven D. ROGERS' computer.

122.    A Case Management Conference in the Family Law matter was held on October 23, 2009, with the lawyers for the parents present along with Defendant Julia LANGLEY, representing Defendant COUNTY regarding the TCSD reports.

123. Despite the fact that the sworn statement in the Search Warrant Return filed on August 20, 2008, by the investigating officer says otherwise, Defendant Julia LANGLEY represented to the Court that the photographs were of adults, not children.

124. To understand the significance of the delays in the release of evidence created by Defendant's, it is important to know that trial had been set and continued over the following dates during the period of litigation which ended on Feb. 24, 2011: Trial was first set for Oct. 1, 2009 and then continued to: Nov. 24, 2009; Dec. 7, 2009; May 13, 2010 and February 14, 2011.

125. On July 16, 2009, Attorney Maria Palazzolo, working for the Law Offices of Seth L. Goldstein, spoke with Lilia Sandoval, confirming that Plaintiff Pamela FOX, Despite her right as a matter of law to have access to the CWS files, would be required to file a petition before the Juvenile Court.

126. Ms. Sandoval refused access to said files and it was necessary to file the petition as indicated.

127. As a result of the objections lodged by Defendant Julia LANGLEY and Defendant Carol HELDING, the Juvenile Court denied access to those reports on August 19, 2009.

128. Subsequently, on October 22, 2009, Juvenile Court Commissioner Charlotte Wittig, issued a second order, deferring the decision about release of those records to the Family Court Bench Officer hearing the custody matter.

129. In March, 2010, C.M.R. was removed from Defendant Steven D. ROGERS by the Family Law Judge and placed with a third party because he was arrested for his ninth alcohol related drunk driving incident.

130. On March 30, 2010, over the objections of Defendant Julia LANGLEY and Defendant Carol HELDING, the Juvenile Court issued yet another order, deferring the release of

the requested police reports and evidence to the Family Court Bench Officer. At various

hearings, including one held on November 12, 2009, before the Family Court,

Defendant COUNTY represented by Defendant Julia LANGLEY and Defendant Carol

HELDING continued to object to the release of those records and evidence.

131.   On September 30, 2010, C.M.R. was restored to the physical custody of Plaintiff

Pamela FOX by the Family Law Judge. The parents share legal custody of Plaintiff

C.M.R.

132.   As recently as October 1, 2010, Defendant Julia LANGLEY and Defendant Carol

HELDING have continued to resist the release of evidence ordered to be provided to

Plaintiff Pamela FOX, objecting to the release of the most incriminating evidence, a

copy of Defendant Steven D. ROGERS' computer hard drive, necessitating the filing of

a Motion to Compel Production set for October 29, 2010.

133.   On October 26, 2010, a stipulation was entered into by private counsel hired by

COUNTY on behalf of Defendant COUNTY, finally authorizing the release of the final

items of evidence.

134.   On December 13, 2010, over a year-and-a-half after the first request for release of

evidence, the last item of evidence, a copy of Defendant Steven D. ROGERS' hard

drive was delivered to Plaintiff Pamela FOX's counsel for further examination by her

experts.  Upon examination by Plaintiff's experts, more child porn was found on the

computer than what was discovered by the sheriff's detectives.

135.   Defendant Steven D. ROGERS now has supervised visitation twice a week for the

duration of one hour per visit.

**STATEMENT OF DAMAGES**

136.   As a direct and proximate result of the incidents alleged in this complaint, plaintiffs

sustained injuries and damages including, but not limited to: pain, suffering, injuries to their bodies, as well as severe emotional distress, fear, anxiety, embarrassment and humiliation, all to their general damage in an amount according to proof.

137. As a further direct and proximate result of the incident alleged in this complaint, Plaintiffs have suffered loss of income, incurred attorney's fees, costs for child care, expenses for psychological care and evaluations and allied expenses and other incidental expenses, all to their special damages in an amount according to proof.

138. In doing the things alleged herein, defendants acted willfully and maliciously and in reckless or callous disregard of the plaintiffs' rights justifying an award of punitive damages in accordance with proof.

139. Plaintiffs have been compelled to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to reasonable attorney's fees pursuant to Title 42, United States Code section 1988.

## FIRST CLAIM FOR RELIEF
Violation of Civil Rights
Title 42 U.S.C. Section 1983
State Created Danger
All Plaintiffs against
All Defendants except Steven D. ROGERS and COUNTY

140. Plaintiffs reallege and incorporate herein by reference the allegations set forth in Paragraphs 1 through 139 of this complaint.

141. In doing the acts complained of herein, defendants, acted under color of state law to deprive plaintiffs as alleged herein, of constitutionally protected rights including, but not limited to:

(a) the right not to be deprived of liberty without due process of

law by misleading a Family Court Judge to remove C.R from the

custody of Plaintiff Pamela FOX;

(b) the right to be free from unreasonable interference with

parent-child relationships by misleading Family Court judges to

remove C.R from the custody of Plaintiff Pamela FOX;

( c) the right to equal protection under the law by not acting on

what was determined by CWS and TCSD to be false allegations

of child sexual and physical abuse and neglect made against

Plaintiff Pamela FOX by Defendant Steven D. ROGERS when

they, in fact, did act against Plaintiff Pamela FOX when they

wrongly determined that Plaintiff Pamela FOX had made false

allegations of sexual abuse against Defendant Steven D.

ROGERS.

142.   As a direct and proximate result of the acts complained of herein, plaintiffs have

suffered general and special damages as set forth in this complaint.

143.   WHEREFORE, Plaintiffs Pamela FOX and C.M.R. pray for judgment against all

Defendants, jointly and severally, for their actual and compensatory damages, for

punitive damages, costs, pre- and post-judgment interest, attorneys' fees and for such

other and further relief as the Court shall deem to be just and proper.

**SECOND CLAIM FOR RELIEF**
Violation of Civil Rights
Title 42, U.S.C. § 1983
All Plaintiffs  against
Defendants COUNTY Only

144.   Plaintiffs reallege and incorporate herein by reference the allegations set forth in

paragraphs 1 through 139 of this complaint.

145.   The failure of CWS to act on allegations of child abuse made by parents in child

custody cases already in the Family Courts constitutes part of a pattern and practice of

the COUNTY to ignore such claims based on discrimination against protective parents who are automatically assumed to be making false allegations to gain advantage in the Family Court.

146. This policy and custom is illustrated in this case by CWS's failing to fully investigate the reported abuse of J.E. and later, C.N., by Ramon ESTRADA, as well as the reported abuse of J.E. by Defendant Steven D. ROGERS.

147. This pattern has been repeated in other cases. On information and belief, there are numerous cases like this one currently in the Tulare County Family Courts. A website attacking the practices of the County with blogs submitted by parents in similar situations has been in operation for more than a year.

148. One such case is *Jackson vs Briones*, Tulare County Superior Court file #VFL235967, where a fourteen month old toddler was found to have a fractured skull and the same social workers, Defendants Leticia CASTANEDA and Erick SOTO, told the father to go to the Family Law court, refusing to investigate previous allegations of abuse on the part of the child's mother, Ms. Briones. In this matter, Ms. Briones has two close relatives who work for CWS. Although the case eventually wound up in the Juvenile Court when the skull fracture was determined to be from shaking the child, the initial reports of abuse, including a report made by one of the Family Court judges, were ignored. In what appears to be retaliation, CWS, has now taken Mr. Jackson's other children away and is seeking adoption for them, terminating his parental rights. Defendant Carol HELDING is acting as counsel for the County.

149. The threatening to take away the children of parent who make reports of child abuse has constituted part of a policy, pattern and practice of the COUNTY to fail to train its social workers in proper investigative practices, as well as state and federal

constitutional requirements embodied in the laws of this Circuit.

150. As a direct and proximate result of the acts complained of herein, plaintiffs have suffered general and special damages as set forth in this complaint.

151. WHEREFORE, Plaintiff's Pamela FOX and C.M.R. pray for judgment against all Defendants, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre- and post-judgment interest, attorneys' fees and for such other and further relief as the Court shall deem to be just and proper.

**THIRD CLAIM FOR RELIEF**
Conspiracy to Interfere with Civil Rights
42 U.S.C. § 1985
Plaintiff's Pamela FOX and C.M.R. against
All Defendants except COUNTY

152. Plaintiffs reallege and incorporate herein by reference the allegations set forth in paragraphs 1 through 139 of this complaint.

153. In committing those acts as described in  paragraphs 1 through 139 of this complaint, Defendants engaged in acts in furtherance of the object of a conspiracy, injuring Plaintiffs Pamela FOX and C.M.R.. in their person and deprived them of their rights of liberty, freedom to associate with their family, due process and equal protection under the laws as citizens of the United States.

154. Thus, the practices of the Defendants in this action constitute a violation of those rights of association and liberty guaranteed by the First (1st) Amendment to the Constitution of the United States.

155. The separation of parent from child intrudes upon a fundamental liberty interest protected by the substantive due process provisions of the Fifth (5th) and Fourteenth (14th) Amendments to the Constitution of the United States.

156. WHEREFORE, Plaintiff's Pamela FOX and C.M.R.. pray for judgment against all

Defendants except COUNTY, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre- and post-judgment interest, attorneys' fees and for such other and further relief as the Court shall deem to be just and proper.

**FOURTH CLAIM FOR RELIEF**
Violation of Civil Rights
Title 42 U.S.C. Section 1983
State Created Danger
Plaintiff C.M.R. against
All Defendants except Steven D. ROGERS and COUNTY

157.  Plaintiffs reallege and incorporate herein by reference the allegations set forth in paragraphs 1 through 139 of this complaint.

158.  In committing and omitting the acts herein described, all Defendants except COUNTY and Steven D. ROGERS created a danger to Plaintiff C.M.R. such that she was molested by Defendant Steven D. ROGERS again.

159.  Plaintiff C.M.R. is a member of a limited and specifically defined group, a vulnerable child who had been molested by her father before and whom was placed with her father because of the affirmative conduct of each defendant herein.

160.  By failing to investigate allegations of abuse as reported by Plaintiff C.M.R. and her mother and recommending that Defendant Steven D. ROGERS have physical custody of Plaintiff C.M.R., these defendants placed Plaintiff C.M.R. at risk of serious, immediate and proximate harm that these defendants recklessly and consciously disregarded.

161.  Such conduct by officials charged with the responsibility of enforcing the child protection laws and who failed to do so with purpose and intent. The perpetrating father was a friend of law enforcement who was related by marriage to the supervising social worker in the matter and that Plaintiff Pamela FOX complained of the violations of law committed by Defendant Ron CASTANEDA to cover up and protect his friend, shocks

the conscious of ordinary citizens of this country. See *Currier v. Doran*, 242 F.3d 905 (10 Cir. 2001).

162. As a direct and proximate result of the acts complained of herein, plaintiffs have suffered general and special damages as set forth in this complaint.

163. WHEREFORE, Plaintiff's Pamela FOX and C.M.R. pray for judgment against all Defendants, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre- and post-judgment interest, attorneys' fees and for such other and further relief as the Court shall deem to be just and proper.

## FIFTH CLAIM FOR RELIEF
### Negligent Retention and Supervision;
All Plaintiffs against
Defendants COUNTY, Leticia CASTANEDA and John ROZUM

164. Plaintiffs reallege and incorporate by reference every allegation stated herein.

165. At all times mentioned herein, Defendants COUNTY, Leticia CASTANEDA and John ROZUM were under a duty to supervise the conduct of its social workers and attorneys and to enforce those regulations necessary for the proper enforcement of the laws of the State of California and to exercise ordinary care to protect the Plaintiffs from abuse of process as established herein.

166. Said defendants were negligent and careless in that it failed to properly train, supervise and retain Defendants Leticia CASTANEDA, Erica SOTO, Julia LANGLEY, Carol HELDING, Ron CASTANEDA, and John ROZUM.  Defendants Leticia CASTANEDA, Erica SOTO were negligently entrusted with exercising the laws for the protection of Plaintiff C.M.R. Defendants COUNTY and John ROZUM were negligent in performing related functions thereby allowing Defendants Leticia CASTANEDA, Erica SOTO to act in such a manner that they conspired to have Plaintiff C.M.R. removed from Plaintiff Pamela FOX.

167. Said Defendant COUNTY also negligently failed to supervise all other Defendants appropriately so as to prevent the type of incidents herein alleged.

168. Said Defendant COUNTY also negligently failed to supervise Defendants Leticia CASTANEDA, Erica SOTO and Ron CASTANEDA appropriately so as to prevent the type of incidents herein alleged, by training them about correct manner in which to effectuate the child protection laws enacted to protect Plaintiff C.M.R. from Defendant Steven D. ROGERS.

169. WHEREFORE, all plaintiffs pray for judgment against all Defendants, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre- and post-judgment interest, attorneys' fees and for such other and further relief as the Court shall deem to be just and proper.

### SIXTH CLAIM FOR RELIEF
Intentional Infliction of Emotional Distress
All Plaintiffs against all defendants except Defendants Julia LANGLEY and Carol HELDING

170. Plaintiffs reallege and incorporate by reference every allegation stated herein.

171. The acts of all defendants except Defendants Julia LANGLEY and Carol HELDING (only immune to these charges due to California's litigation privilege) as alleged herein were extreme, outrageous, intentional, malicious, and calculated to cause the plaintiffs to suffer anxiety, severe and serious emotional and physical distress and suffering. All Defendants' conduct except Defendants Julia LANGLEY and Carol HELDING (only immune to these charges due to California's litigation privilege) was done with wanton and reckless disregard of the consequences to plaintiffs. Defendant COUNTY is liable to Plaintiffs due to respondeat superior liability.

172. Furthermore, specifically, Defendants Leticia CASTANEDA and Erica SOTO committed the acts described herein with the purpose of achieving a fear in Plaintiff

Pamela FOX to not report abuse by Defendant Steven D. ROGERS because he was a close personal friend of Defendant Ron CASTANEDA and had caused Defendant Ron CASTANEDA to retire early from TCSD.

173.   As a result of said defendant's intentional infliction of emotional distress, the plaintiffs have suffered damages in an amount according to proof.

174.   Said defendants did the acts alleged herein maliciously, fraudulently, oppressively, and/or with reckless and conscious disregard for the rights of all Plaintiffs and/or with an improper and evil motive amounting to malice. Plaintiffs, and each of them, are thus entitled to recover punitive damages from defendants in an amount according to proof.

175.   WHEREFORE, all plaintiffs pray for judgment against all Defendants except COUNTY, Julia LANGLEY and Carol HELDING, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre- and post-judgment interest, attorneys' fees and for such other and further relief as the Court shall deem to be just and proper.

## SEVENTH CLAIM FOR RELIEF
### General Negligence
All Plaintiffs against all Defendants except Julia LANGLEY and Carol HELDING

176.   Plaintiffs reallege and incorporate by reference every allegation stated herein.

177.   Defendants except Julia LANGLEY and Carol HELDING had statutory and common law duties to properly effectuate the child protection laws of the State of California and not to interfere with the civil rights of plaintiffs.

178.   Defendants' acts and omissions as set forth herein breached those duties. Defendant COUNTY is liable to Plaintiffs due to respondeat superior liability.

179.   Additionally, under California Evidence Code Section 669, the negligence of a; defendants except John ROZUM, Julia LANGLEY and Carol HELDING may be

presumed, for the reason that:

    a.     Defendants, and each of them, violated the child protection statues, placing Plaintiff C.M.R. in harms way pursuant to California Penal Code Section 273 (Endangerment) and failing to investigate reports of child abuse pursuant to the dictates of *Alejo vs The City of Alhambra* (1999) 75 Cal.App.4th 1180;

    b.     The violations proximately caused injury to plaintiffs;

    c.     The injuries to plaintiffs were occurrences of the nature which the statutes are designed to prevent; and

    d.     plaintiffs were members of the class of persons for whose protection these statutes were adopted.

180.    As a result of the negligence of defendants, and each of them, plaintiffs were injured in an amount according to proof.

181.    WHEREFORE, all plaintiffs pray for judgment against all Defendants, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre- and post-judgment interest, attorneys' fees and for such other and further relief as the Court shall deem to be just and proper.

### EIGHTH CLAIM FOR RELIEF
Negligent Infliction of Emotional Distress
All Plaintiffs against
All Defendants except Defendants Julia LANGLEY and Carol HELDING

182.    Plaintiffs reallege and incorporate by reference every allegation as stated herein.

183.    All Defendants in their special relationship as child protection agency employees and as to Steven D. ROGERS, as Plaintiff C.M.R.'s natural father had the duty to exercise ordinary care regarding Plaintiff C.M.R.

184.    Defendants breached their natural and legal duties to plaintiffs by doing the acts herein alleged.

185.   In doing each and all of the acts and omissions herein alleged, all Defendants engaged in a course of conduct which was grossly negligent, extreme and outrageous. All Defendants engaged in said course of conduct with wanton and reckless disregard of the consequences or harm that was likely to result to plaintiffs.

186.   All Defendants knew or should in the exercise of reasonable care have known, that the foregoing conduct would cause the plaintiffs to suffer severe emotional distress.

187.   As stated herein, Defendants Leticia CASTANEDA, Erica SOTO and Ron CASTANEDA were the agents of COUNTY.  The conduct of Defendants Leticia CASTANEDA, Erica SOTO and Ron CASTANEDA as herein alleged, was done within the course and scope of that agency, and the aforementioned acts were foreseeable and committed by use of their authority as by use of their authority as child protection agency employees and mandated reporters [as defined by California Penal Code sub-sections 11165.7(15) and (19) and *Alejo vs The City of Alhambra* (1999) 75 Cal.App.4th 1180, 1193-1194], such that Defendant COUNTY is liable to plaintiffs based on the doctrine of respondeat superior in addition to its direct liability for its own conduct.

188.   Defendant COUNTY despite actual knowledge and adequate opportunity to learn of the misconduct of its agents and employees, adopted, approved and ratified the acts, omissions and misconduct of its agents and employees.

189.   As a result of defendants' negligent infliction of emotional distress, the plaintiffs have suffered damages as alleged herein and are entitled to relief in an amount according to proof.

190.   WHEREFORE, all plaintiffs pray for judgment against all Defendants, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre-

and post-judgment interest, attorneys' fees and for such other and further relief as the Court shall deem to be just and proper.

## NINTH CAUSE OF ACTION
### Sexual Battery
(Plaintiff C.M.R. against Defendant Steven D. ROGERS)

191.  Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-139.

192.  Defendant Steven D. ROGERS, intentionally touched intimate parts of Plaintiff C.M.R., resulting in sexually offensive contacts including but not limited to touching her genitals and posing her to photograph her genitals.

193.  The acts and omissions by Defendant Steven D. ROGERS as alleged herein, were intentional, and caused Plaintiff C.M.R. to suffer anguish and serious physical and emotional distress. The acts and omissions of Defendant were in wanton and reckless disregard of the consequences to Plaintiff.

194.  As a result of said Defendants' intentional acts, Plaintiff has suffered as alleged herein, and is entitled to damages in an amount according to proof.

195.  Defendant Steven D. ROGERS did the acts alleged herein maliciously, fraudulently, oppressively, and/or with reckless and conscious disregard for the rights and safety of Plaintiff C.M.R. and/or with an improper and evil motive amounting to malice. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

WHEREFORE, all plaintiffs pray for judgment against all Defendants, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre- and post-judgment interest, attorneys' fees and for such other and further relief as the Court shall deem to be just and proper.

**ELEVENTH CAUSE OF ACTION**
Civil Conspiracy
All Plaintiffs against
196. All Defendants except Julia LANGLEY, Carol HELDING, John ROZUM

197.    Plaintiff hereby incorporates by reference paragraphs 1 through 139 as though fully set forth.

198.    In doing the acts describe herein, all defendants except Julia LANGLEY, Carol HELDING, John ROZUM (only immune to these charges due to California's litigation privilege) acted in concert, consulting and conferring with one-another, jointly engaging in said acts, thereby conspiring to commit the civil wrongs alleged herein.   Defendant COUNTY is liable to plaintiffs based on the doctrine of respondeat superior in addition to its direct liability for its own conduct.

199.    WHEREFORE, all plaintiffs pray for judgment against all Defendants, jointly and severally, for their actual and compensatory damages, for punitive damages, costs, pre- and post-judgment interest, attorneys' fees and for such other and further relief as the Court shall deem to be just and proper.

**TWELFTH CAUSE OF ACTION**
Negligence Per Se
Plaintiff C.M.R. against Defendant Steven D. ROGERS

200.    Plaintiffs reallege and incorporate by reference every allegation stated herein.

201.    Defendant Steven D. ROGERS committed a sexual battery, that constitutes both a felony pursuant to California Penal Code Section 243.4 and felony child molestation pursuant to California Penal Code Section 288(a). In addition, the took naked photographs of Plaintiff C.M.R.'s genitals and was found to have child pornography on his computer in violation of California Penal Code sections 311.1 and 311.4.

202.    Additionally, under California Evidence Code Section 669, the negligence of Defendant Steven D. ROGERS may be presumed, for the reason that:

a.     Defendant violated the aforementioned statues.

b.     The violations proximately caused injury to plaintiff;

c.     The injuries to plaintiffs were occurrences of the nature which the statutes were designed to prevent; and

d.     plaintiff is a member of the class of persons for whose protection these statutes were adopted.

203.   As a result of the negligence of Defendant Steven D. ROGERS Plaintiff C.M.R. was injured in an amount according to proof.

204.   WHEREFORE, all plaintiff pray for judgment against Defendants Steven D. ROGERS for her actual and compensatory damages, for punitive damages, costs, pre- and post-judgment interest, attorneys' fees and for such other and further relief as the Court shall deem to be just and proper.

### JURY TRIAL DEMAND

43. Plaintiffs demands a jury trial in this matter.

### PRAYER

WHEREFORE, plaintiffs prays for judgment against the defendants as follows:

1. General damages according to proof against all defendants;

2. Special damages according to proof against all defendants;

3. Punitive damages according to proof against the individual defendants;

4. Attorneys' fees pursuant to statute against all defendants;

5. Costs of suit; and

6. For such other and further relief as the court deems appropriate.

DATED: March 24, 2011

/s/ Seth L. Goldstein
Seth L. Goldstein

Complaint for Damages
Pamela Fox,et al vs County of Tulare, et al                                    35

Attorney for Plaintiffs