IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PAMELA J. FOX, et al., | ) | 1:11-CV-00520 AWI SMS |
| Plaintiffs, | )<br>)<br>) | ORDER FOR<br>SUPPLEMENTAL BRIEFING |
| v. | )<br>) | |
| COUNTY OF TULARE, et al., | )<br>) | |
| Defendants. | ) | |

    Currently pending before this Court is Defendants Leticia Castaneda, Erica Soto, and Ron Castaneda's motion to dismiss. On September 6, 2011, the Court held a hearing with respect to this motion. The Court concludes that supplemental briefing is necessary relating to the following issues.

    1.      State Created Danger Claim

    In the fourth cause of action, Plaintiffs bring a state created danger claim under 42 U.S.C. § 1983. Defendants contend that they are not liable because Defendants did not create any new danger to C.M.R. Reply at 2:21. Defendants state that Plaintiffs' Complaint suggests that Defendant Rogers had at least partial custody of C.M.R. prior to Rogers being awarded primary physical custody on May 12, 2009. Id. at 2:22-24; Complaint at ¶¶ 18, 38, 41, 42, 99, 117. Therefore, Defendants argue that any alleged actions or inactions by the Defendants did not expose C.M.R. to any danger to which she was not already exposed. See Deshaney v. Winnebago Cnty. Dept. of Soc. Servs., 489 U.S. 189 (1989) (concluding that there was no state created danger when the state temporarily removed minor child from father and then returned

child to father because the state placed the child in no worse position than had the state not acted at all).

At the hearing, Defendants cited again to paragraph 18 of the Complaint, which suggests that Defendant Rogers had at least partial custody of C.M.R. as of July 2008. In response, Plaintiffs represented to the Court that Plaintiff Fox and Defendant Rogers had shared custody of C.M.R. prior to May 12, 2009, but were unable to point to a specific allegation in the Complaint where this is alleged.

Plaintiffs are ordered to address whether the custody situation of C.M.R. prior to May 12, 2009 is clearly articulated in the Complaint. In addition, Plaintiffs are ordered to address whether their state created danger claim is barred under Deshaney if Rogers already had shared custody of C.M.R. when Rogers was granted primary physical custody on May 12, 2009?

    2.    Compliance with the Government Claims Act

Defendants move to dismiss all of Plaintiffs' state law claims for failure to comply with the Government Claims Act ("GCA").

Before suing a public entity or its employees, a plaintiff must present a timely written claim for damages to the public entity under the GCA. See Cal. Gov't Code § 911.2. Such a claim must be presented to the governmental entity no later than six months after the cause of action accrues. Id. Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit, and thus is an element of the plaintiff's cause of action. State v. Superior Court of Kings County, 32 Cal.4th 1234, 1245 (2004); K.J. v. Arcadia Unified Sch. Dist., 172 Cal. App. 4th 1229, 1238 (2009).

The public entity must approve or reject a timely claim within 45 days and provide written notice to the claimant. See Cal. Gov't Code §§ 912.4, 912.6, 913. If a timely claim is rejected in whole or in part, the claimant may file suit within six months after the date notice is personally delivered or deposited in the mail. Id. at §§ 945.4, 945.6(a)(1). If the rejection is not properly noticed in accordance with section 913 however, the action may be filed in court within

2

two years from the accrual of the cause of action. Id. at §§ 945.6(a)(2).

If the entity determines that the claim was filed late, it must return the claim within 45 days from the date it was filed, along with a notice that the claimant may apply for leave to present a late claim. Id. at §§ 911.3 and 911.4. In responding to an application for leave to present a late claim, the entity must grant or deny leave within 45 days and provide notice. Id. at §§ 911.6, 911.8. If an application for leave to file a late claim is rejected by the public entity, the claimant must first obtain a court order for relief from the requirements of the claims act before filing a suit. Id. at § 946.6. A petition for such an order must be filed with the court within six months after the application is denied or deemed denied. Id. at §§ 946.6(b), 911.6.

Where compliance with the GCA is required, the plaintiff has the burden of pleading and proving compliance. Mangold v. California Pub. Utils Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). In this case, Plaintiffs allege in their Complaint that they have "complied with the Government Tort Claims statutes of California, having had the most recent claim denied on October 27, 2010." Complaint at ¶ 3. Defendants argue that Plaintiffs cannot proceed with their state law claims because Plaintiffs never petitioned for relief to file a late claim under the GCA. Reply at 6:8-11.

On September 17, 2010, Plaintiffs submitted a tort claim to the Clerk of the Board of Supervisors of Tulare County. On September 21, 2010, the claim was returned as untimely because the claim was not presented within six months of the accrual of the cause of action. Plaintiffs submitted another tort claim on October 14, 2010, which was substantially the same as the September 17, 2010 tort claim. The second tort claim was returned as untimely on October 27, 2010. Both the September 21 and October 24, 2010 notices expressly stated that no action was taken with respect to Plaintiffs' claims and explained that Plaintiffs only recourse was to apply for leave to present a late claim. Instead of filing a petition for leave to present a late claim, Plaintiffs commenced the present action on March 24, 2011.

In their opposition, Plaintiffs contend that they filed a timely claim. Opposition at 34:19.

A claimant who disputes the determination of untimeliness must raise that issue by filing suit rather than filing an application for leave to present a late claim. Toscano v. Cnty. of Los Angeles, 92 Cal. App. 3d 775, 782-83 (1979). Where a public entity erroneously returns a timely claim as untimely, the entity's action will be construed as a rejection of the claim. Rason v. Santa Barbara Housing Auth., 201 Cal. App. 3d 817, 830 (1988). Thus, if the trial court finds that the tort claim shows facts on its face which, if true, would make the claim timely, the entity's determination that the claim was untimely is construed as an outright rejection. Scott v. Cnty. of Los Angeles, 73 Cal. App. 3d 476, 482 (1977).

     As a preliminary matter, Defendants contended at the hearing that this Court is without jurisdiction unless Plaintiffs filed both a Complaint and an application for leave to file a late claim as required by the Rason case. In Rason, the California Court of Appeal stated that "the cautious claimant who wishes to preserve both issues of timeliness and of excusable lateness must file a complaint in court and a section 911.4 application with the public entity." Rason, 201 Cal. App. 3d at 828. "The claimant is therefore not forced to make the agonizing choice between two exclusive remedies." Id.

     In this case, Plaintiff filed a Complaint in this Court, but did not file an application for leave to file a late claim with the County of Tulare. Contrary to Defendants' assertion at the hearing, Rason does not appear to conclude that a Plaintiff must file a section 911.4 application for leave to file a late claim in order for the Court to have jurisdiction. The Rason case merely suggests that a "cautious claimant" must file both a Complaint and a section 911.4 application in the event a court concludes that a plaintiff's tort claims were untimely. Therefore, Defendants are ordered to address whether there is other case authority that concludes that a court is without jurisdiction to adjudicate a plaintiff's challenge to a public entity's determination of untimeliness if a plaintiff does not also file a section 911.4 application.

     With respect to whether Plaintiffs' tort claims were timely on their face, Plaintiffs analogize their case to the Scott case cited to above. Opposition at 36:2. In Scott, plaintiff's

4

original tort claim was denied by operation of law, but the notice from the county stated that the claim was untimely.  Scott, 73 Cal. App. 3d at 479.  Plaintiff filed a second tort claim, which the county treated as an application to file a late claim under California Government Code § 911.4.  Id.  This claim was rejected.  Id.  Plaintiff then filed a petition to file a late claim in the superior court pursuant to California Government Code § 946.6, which was denied.  Id. at 480.  Subsequently, plaintiff filed a complaint for damages.  Id.  The California Court of Appeal held that plaintiff's original tort claim on its face alleged facts that made the claim timely and thus the county's rejection of that claim was an outright rejection.  Id. at 484.  The county's failure to give proper notice of that rejection extended the statute of limitations for filing a complaint to two years because the rejection was not properly noticed pursuant to California Government Code § 913.  Id.

The date of accrual of a cause of action marks the starting point for calculating the claims presentation period.  Cal. Gov't Code § 901; K.J., 172 Cal. App. 4th at 1239.  "The general rule for defining the accrual of a cause of action sets the date as the time 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises[.]'"  Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999) (citation omitted).  In other words, a cause of action accrues when it is "complete with all of its elements."  Id.  An exception to the general rule is the discovery rule, which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  Id.  A plaintiff "has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements."  Id. at 398 (citation omitted).

In their opposition and at the hearing, Plaintiffs have only discussed the accrual of their conspiracy claim.  However, in their Complaint, Plaintiffs filed state law claims for (1) negligent retention and supervision against the County, Leticia Castaneda and John Rozum; (2) intentional infliction of emotional distress against the County, Leticia Castaneda, Erica Soto, Ron Castaneda and John Rozum; (3) negligence against the County, Leticia Castaneda, Erica Soto, Ron

Castaneda and John Rozum; (4) negligent infliction of emotional distress against the County, Leticia Castaneda, Erica Soto, Ron Castaneda and John Rozum; and (5) conspiracy against the County, Leticia Castaneda, Erica Soto and Ron Castaneda.

The Court directs Plaintiffs to address how each state law claim against each Defendant was timely on its face. Plaintiffs must point to their tort claim forms and indicate when each state law claim accrued against each Defendant and explain why they are timely.

### 3.  Absolute Prosecutorial Immunity

Defendants Leticia Castaneda and Erica Soto move to dismiss Plaintiffs' first, third and fourth causes of action, which are brought under 42 U.S.C. §§ 1983 and 1985. Defendants argue that Plaintiffs' federal civil rights claims are based on Defendants' conduct in the Family Law Court, which involved conduct that was the basis for the removal of C.M.R. from Fox. Opposition at 3:24-26. Defendants argue that these actions were "quasi-prosecutorial" and therefore they are absolutely immune from liability with respect to these claims. Id. at 3:26.

A prosecutor is protected by absolute immunity from liability for damages under 42 U.S.C. § 1983 "when performing the traditional functions of an advocate." Kalina v. Fletcher, 522 U.S. 118, 131 (1997). A prosecutor's activity involves an advocacy function and is protected by absolute immunity only when that activity is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976).

Prosecutorial immunity depends on "the nature of the function performed and not the identity of the actor who performed it." Kalina, 522 U.S. at 127. Thus, absolute prosecutorial immunity has been extended to non-prosecutors. In Meyers v. Contra Costa County Department of Social Services, 812 F.2d 1154, 1157 (9th Cir. 1987), cert. denied, 484 U.S. 829 (1987), the Ninth Circuit extended absolute prosecutorial immunity to social service caseworkers in initiating and pursuing child dependency proceedings. The Ninth Circuit reasoned:

> Although child services workers do not initiate criminal proceedings, their responsibility to exercise independent judgment in determining when to bring such proceedings, is not very different from the responsibility of a criminal prosecutor. The social worker must make a quick decision based perhaps on incomplete information as to whether to

commence investigations and initiate proceedings against parents who may have abused their children. The social worker's independence, like that of a prosecutor, would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit. We therefore hold that social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings.

Id.

In their opposition and at the hearing, Plaintiffs maintain that Defendants' conduct is not quasi-prosecutorial. Opposition at 18-19. Citing to Beltran v. Santa Clara, 514 F.3d 906 (9th Cir. 2008), Plaintiffs contend that Defendants conduct was investigative and not quasi-prosecutorial. Opposition at 19.

Therefore, Defendants are directed to clarify why the allegations against them were quasi-prosecutorial and indicate whether there are any cases that have analogized child dependency proceedings to custody disputes in Family Court.

   4.  Claims against Ron Castaneda under 42 U.S.C. §§ 1983 and 1985

Plaintiffs bring direct constitutional violation claims against Ron Castaneda in the first and third claim for relief under 42 U.S.C. § 1983 and then bring a conspiracy claim against Ron Castaneda under 42 U.S.C. § 1985. Defendants argue that there are insufficient allegations to show a constitutional violation or that he participated in a conspiracy.

Plaintiffs conceded at the hearing that the only allegations against Ron Castaneda occurred in 2007. See Complaint at ¶¶ 36-40. Plaintiffs are directed to explain how these allegations are sufficient to show that Ron Castaneda's conduct violated Plaintiffs' constitutional rights. If Plaintiffs are only seeking claims against Ron Castaneda based on conspiracy, then Plaintiffs must clarify this in their supplemental brief. In addition, Plaintiffs appeared to indicate at the hearing that the only allegation that Ron Castaneda participated in a conspiracy was the fact that he was the brother-in-law of Defendant Leticia Castaneda. Plaintiffs are directed to clarify their conspiracy theory with respect to Ron Castaneda and explain if there are any other allegations in the Complaint relating to Ron Castaneda's participation in the conspiracy.

   5.  Conspiracy claim under 42 U.S.C. § 1985

In the third claim for relief, Plaintiffs bring a conspiracy claim under 42 U.S.C. § 1985. A claim brought for violation of section 1985(3) requires four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted). A racial, or perhaps otherwise class-based, invidiously discriminatory animus is an indispensable element of a section 1985(3) claim. Sprewell v. Golden State Warriors, 266 F.3d 979, 989 (9th Cir. 2001).

For the first time in the opposition, Plaintiffs state that their conspiracy claim under 42 U.S.C. § 1985(3) claim is based on gender discrimination against Plaintiff Fox. Opposition at 24-32. At the hearing, Plaintiffs requested that they be granted leave to amend this claim. Plaintiffs are directed to explain whether there are any allegations in the Complaint that suggest any gender discrimination or whether they are formally requesting leave to amend.

6.   Other legal issues

Plaintiffs and Defendants may brief any other issue they deem relevant and want to bring to the Court's attention.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. On or before September 23, 2011, the parties shall file supplemental briefing consistent with this order; and
2. On or before September 30, 2011, the parties may file a reply brief to the opposing parties' supplemental brief.

IT IS SO ORDERED.

Dated:   September 9, 2011

_____
CHIEF UNITED STATES DISTRICT JUDGE

8