IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA J. FOX, et al., ) <br> ) <br>               Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> COUNTY OF TULARE, et al., ) <br> ) <br>               Defendants. ) <br> _____) | 1:11-CV-00520 AWI SMS <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** <br><br> [Doc. #9 and #27] |

**INTRODUCTION**

On March 24, 2011, Plaintiff Pamela J. Fox, on behalf of herself and as Next Friend to Plaintiff C.M.R., a Minor, filed a Complaint against the Minor's father, Steven D. Rogers; County of Tulare ("County"); County social workers Leticia Castaneda and Erica Soto; former County Sheriff's Department Lieutenant Ron Castaneda; Chief Deputy County Counsel John Rozum; and Deputy County Counsels Julia Langley and Carol Helding. Plaintiffs bring claims under 42 U.S.C. §§ 1983 and 1985 and several state tort law claims, which relate to the County's handling of Fox's custody dispute with Rogers. Plaintiffs' general theory is that all Defendants conspired to assure that Rogers retained custody of C.M.R.

On June 13, 2011, Defendants County, John Rozum, Julia Langley and Carol Helding filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On August 8, 2011, Defendants Leticia Castaneda, Erica Soto and Ron Castaneda filed a motion to

dismiss pursuant to Rule 12(b)(6).[1]  For the reasons that follow, Defendants' motions will be granted in part and denied in part.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).  The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[.]"  Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (citations omitted).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v.

---

[1]  The Court held a hearing on this motion on September 6, 2011.

United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

**FACTUAL BACKGROUND**

C.M.R. is a minor female child born in 2005. Complaint at ¶ 5. C.M.R. is the daughter of Pamela Fox ("Fox") and Steven Rogers ("Rogers"). Id. Plaintiffs' general theory in the Complaint is that all Defendants conspired to assure that Rogers retained custody of C.M.R. Id. at ¶ 18.

Plaintiffs allege that the conspiracy began when Rogers and Ron Castaneda, a close friend who was then a Lieutenant in the Tulare County Sheriff's Department ("TCSD"), began to falsify reports of child abuse against Fox. Id. at ¶ 16. On or about April 24, 2007, Ron Castaneda improperly and illegally accessed confidential law enforcement records about Edward Skelton ("Skelton"), Fox's boyfriend at the time, in order to benefit Rogers. Id. at ¶ 39. Ron Castaneda filed a report on April 24, 2007, that tried to justify Rogers taking C.M.R. to urgent care and the hospital for rape examinations. Id. at ¶ 40. On April 25, 2007, Rogers took C.M.R. to urgent care, claiming that C.M.R. had been molested by Skelton. Id. at ¶ 41. Thereafter, Rogers made several reports of abuse against Skelton, which were all declared "unfounded." Id. at ¶¶ 42 and 44. In August of 2007, Fox and her attorney filed a personnel complaint to TCSD regarding Ron Castaneda's conduct.[2] Id. at ¶ 46. On or about September 2007, after an investigation was conducted by Internal Affairs, Ron Castaneda took an early retirement from TCSD. Id. at ¶ 47. Subsequently, on October 18, 2007, Rogers filed for custody of C.M.R. in the Family Law Court.

---

[2] Plaintiffs also allege that Ron Castaneda "possibly" planted drugs in Skelton's car. Complaint at ¶ 17.

3

Id. at ¶ 49.

On July 23, 2008, C.M.R. told Fox that Rogers had molested her and that Rogers photographed her naked. Id. at ¶ 51. Child Welfare Services ("CWS") and TCSD investigated these allegations. Id. at ¶ 52. On July 23, 2008, TCSD prepared an affidavit for a search warrant of Rogers' computer, which was related to TCSD investigation case number 08-10615. Id. at ¶ 53. The search warrant was executed on July 25, 2008. Id. ¶ 54. TCSD found "260 images of prepubescent children depicted in a sexually explicit manner" on Rogers' computer. Id. No charges were ever filed related to that case. Id. at ¶ 55. Fox was never told of the discovery of the child pornography. Id. at ¶ 53.

CWS was later notified of numerous sexual abuse allegations against Rogers. Id. at ¶¶ 59, 62-64. CWS did not conduct an investigation or take any action against Rogers based on these allegations. Id. On November 6, 2008, Erica Soto ("Soto"), County social worker, reported to TCSD that Fox had alleged that C.M.R. had been molested by Rogers. Id. at ¶ 68. Soto told TCSD that Fox had made four prior false allegations against Rogers. Id. at ¶ 69. As a result of Soto's influence, TCSD's investigation was closed as "unfounded." Id. at ¶ 70. Contrary to Soto's assertion, Fox did not report this incident to TCSD or CWS until they came to speak with her. Id.

On December 3, 2008, Leticia Castaneda ("Leticia"), supervising County social worker and sister-in-law to Ron Castaneda, and Soto called a meeting with Fox and Rogers. Id. at ¶ 76. During the meeting, Leticia and Soto revealed the contents of confidential CWS files to Rogers. Id. at ¶ 77. Rogers used the confidential information in his quest for custody of C.M.R. Id. at ¶ 78. At the meeting, Leticia accused Fox of making prior false accusations against the fathers of Fox's other children. Id. at ¶ 79. In addition, Leticia told Fox that she had more power than any judge and threatened to take C.M.R. away from her. Id. at ¶¶ 79-80.

On December 4, 2008, Leticia and Soto sought to file a petition in Juvenile Court to remove C.M.R. From Fox. Id. at ¶ 83. Leticia and Soto began conducting an investigation. Id.

1  at ¶ 84.  On December 8, 2008, Soto interviewed Fox's daughter, J.E.  Id.  J.E. stated that C.M.R.
2  would exhibit signs of sexual abuse after she returned from visiting Rogers.  Id.  Furthermore,
3  J.E. told Soto that she was told to sleep in Rogers' bed when he babysat the children.  Id. at ¶ 85.
4  CWS did nothing to protect C.M.R. during this investigation and failed to investigate the
5  allegations of abuse.  Id. at ¶¶ 85, 160.

6       Leticia and Soto recommended to Lourdes Dawson ("Dawson"), Family Court mediator,
7  that Rogers have physical custody of C.M.R.  Id. at ¶¶ 96-98, 160.  Soto explained to Dawson
8  that "the mother has a history of making sexual abuse allegations towards Father, Mr. Rogers,
9  which have been unfounded by TCSD."  Id. at ¶ 98.

10       On May 12, 2009, a trial was held in the Family Law Court.  Id. at ¶ 99.  The hearing
11  resulted in no findings of sexual abuse and no findings that Fox had made false allegations
12  against Rogers.  Id.  Fox was granted limited visitation without restriction and Rogers was
13  granted primary physical custody.  Id.  C.M.R. was forced to live with Rogers immediately
14  thereafter.  Id.

15       On July 14, 2009, Lizbeth Lerma ("Lerma"), C.M.R.'s therapist, reported to CWS that
16  Fox had contacted her regarding Rogers sexually abusing C.M.R.  Id. at ¶¶ 100-103.  Lerma
17  reported that Fox told her that she would not contact CWS or law enforcement because she was
18  "warned" by CWS about making further reports of abuse.  Id. at ¶ 104.  On July 14, 2009,
19  Deputy J. Zendejas of TCSD met with Soto.  Id. at ¶ 105.  Soto informed Deputy Zendejas that
20  Fox has made repeated false accusations of sexual abuse against Rogers and told Deputy
21  Zendejas that she believed Fox had "mental problems."  Id.  Deputy Zendejas closed the case,
22  stating that Soto "said that she did not feel C.M.R. as being sexually abused or that [she] was at
23  risk of being abused by her father."  Id. at ¶ 109.  Soto stated that she was going to contact the
24  Family Court to recommend that the visitation rights for Fox be suspended due to "possible
25  emotional abuse."  Id. at ¶ 110.  Also on July 14, 2009, Leticia and Soto called Fox to a meeting
26  for an interview.  Id. at ¶ 114.  When Fox told them that she was going to record the

28       5

1  conversation, Leticia stated: "You do and I will sue the hell out of you and you will never see
2  your daughter again!" Id. at ¶ 114.
3         On July 22, 2009, after a hearing without testimony in the Family Law Court, Fox was
4  placed on supervised visitation, allowed to see her daughter only twice a week for two hours
5  each. Id. at ¶ 117. On September 8, 2009, the Family Law judge released the Family Court
6  Services file to the parties, which are the files that the mediators and court investigators use to
7  make their recommendations. Id. at ¶ 119. Among the documents found in the file are the
8  investigative reports filed by TCSD. Id. However, there were no reports pertaining to the
9  discovery and recovery of child pornography. Id. at ¶ 120. Dawson was deposed on December
10 2, 2009, and testified that she was never told of the finding of any child pornography on Rogers'
11 computer. Id. at ¶ 121. Plaintiffs allege that Leticia and Soto suppressed the reports of child
12 abuse and misdirected other professionals involved in the case, including TCSD investigators,
13 Family Court Service investigators, and the Family Court Judges in order to assure that Rogers
14 retained custody of C.M.R. Id. at ¶ 18.
15        Plaintiffs allege that starting in July 2009, once the social workers' previous conduct
16 came to light, Defendants John Rozum ("Rozum"), Julia Langley ("Langley"), and Carol Helding
17 ("Helding"), who were employed as County Counsels, began a concerted effort to prevent
18 Plaintiffs from accessing certain reports and evidence pertaining to Rogers. Id. at ¶¶ 10-12, 19.
19 On October 23, 2009, a Case Management Conference was held in the Family Law matter
20 between Fox and Rogers. Id. at ¶ 122. Lawyers for Fox and Rogers were present as well as
21 Langley on behalf of the County. Id. Langley objected to the release of TCSD reports relating to
22 Rogers. Id. at ¶¶ 122-124. Plaintiffs allege that Langley made misrepresentations to the Court
23 regarding the contents of the TCSD reports. Id. at ¶ 123. Specifically, Langley represented that
24 the photographs were of adults and not children. Id.
25        Fox also sought access to files from CWS. Id. at ¶ 125. Fox filed a petition before the
26 Juvenile Court in order to gain access to the files. Id. Langley and Helding filed objections to
27
28                                                6

the release of the files. Id. at ¶ 127. As a result of the objections, the Juvenile Court denied access to those reports on August 19, 2009. Id. Subsequently, on October 22, 2009, Juvenile Court Commissioner Charlotte Wittig issued a second order deferring the decision about the release of the CWS files to the Family Court Bench Officer hearing the custody matter. Id. at ¶ 128.

On March 30, 2010, over the objections of Langley and Helding, the Juvenile Court issued yet another order, deferring the decision of whether to release requested police reports and evidence relating to Rogers to the Family Court Bench Officer. Id. at ¶ 130.

As recently as October 1, 2010, Langley and Helding have continued to resist the release of evidence ordered to be provided to Fox. Id. at ¶ 132. The evidence that Fox requests includes a copy of Rogers' computer hard drive. Id. Subsequently, Fox filed a motion to compel production. Id. On October 26, 2010, a stipulation was entered into in which the County authorized the release of the final items of evidence that was requested by Fox.[3] Id. at ¶ 133.

**DISCUSSION**

1.  Defendants Rozum, Langley and Helding are not absolutely immune from Plaintiffs' federal law claims.

Defendants Rozum, Langley and Helding (collectively "Attorney Defendants") seek to dismiss Plaintiffs' first through fourth claims for relief, which are brought under 42 U.S.C. §§ 1983 and 1985(3).[4] Attorney Defendants state that "Plaintiffs essentially allege that the Attorney Defendants, under color of state law, conspired to deny Plaintiffs their due process and

---

[3] The stipulation was entered into by private counsel that was hired by County. Complaint at ¶ 133.

[4] Specifically, Plaintiffs' first claim for relief is for "State Created Danger" under 42 U.S.C. § 1983 against all Defendants except Rogers and County. Plaintiffs' second claim for relief is a municipal liability claim under 42 U.S.C. § 1983 against the County. Plaintiffs' third claim for relief is for "Conspiracy to Interfere with Civil Rights" under 42 U.S.C. § 1985(3) against all Defendants except County. Plaintiffs' fourth claim for relief is brought only by C.M.R. and is for "State Created Danger" under 42 U.S.C. § 1983 against all Defendants except Rogers and County.

7

equal protection rights by representing County in Child Welfare proceedings, misrepresenting facts to the court and objecting to the wholesale release of [Child Welfare Service] records." Motion at 12:18-22, Doc. 9-1 at 12.  Thus, Attorney Defendants argue that the sole allegations against them are for their purported improper discharge of a prosecutorial function.  Motion at 13:13-14, Doc. 9-1 at 13.  Therefore, Attorney Defendants contend that they are absolutely immune from liability for their prosecutorial functions and that the County is similarly shielded from liability for the actions of Attorney Defendants in discharging their prosecutorial functions. Id. at 13:14-20, Doc. 9-1 at 13.

"The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." Burns v. Reed, 500 U.S. 478, 486-87 (1991).  The official seeking absolute immunity therefore bears the burden of demonstrating that absolute immunity is warranted, and the Supreme Court has been "quite sparing in its recognition of claims to absolute official immunity." Forrester v. White, 484 U.S. 219, 224 (1988).

A prosecutor is protected by absolute immunity from liability for damages under 42 U.S.C. § 1983 "when performing the traditional functions of an advocate." Kalina v. Fletcher, 522 U.S. 118, 131 (1997).  A prosecutor's activity involves an advocacy function and is protected by absolute immunity only when that activity is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976).  Thus, acts undertaken by a prosecutor "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State," are entitled to the protections of absolute immunity.[5] Kalina, 522 U.S. at 126.  The Supreme Court has stated that absolute immunity for prosecutors is warranted because the threat of "harassment by unfounded litigation"

---

[5] See also Kalina, 522 U.S. at 126 (absolute immunity applies when prosecutor appears in court to present evidence in support of a search warrant application); Burns v. Reed, 500 U.S. 478, 496 (1991) (absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation); Buckley v. Fitzsimmons, 509 U.S. 259, 277 (1993) (absolute immunity does not apply when a prosecutor makes statements to the press); Kalina, 522 U.S. at 132 (absolute immunity does not apply when a prosecutor acts as a complaining witness in support of a warrant application).

could both "cause a deflection of the prosecutor's energies from his public duties" and also lead the prosecutor to "shade his decisions instead of exercising the independence of judgment required by his public trust." Imbler, 424 U.S. at 423.

Prosecutorial immunity depends on "the nature of the function performed and not the identity of the actor who performed it." Kalina, 522 U.S. at 127. Thus, absolute prosecutorial immunity has been extended to non-prosecutors. For example, in Meyers v. Contra Costa County Department of Social Services, 812 F.2d 1154, 1157 (9th Cir. 1987), cert. denied, 484 U.S. 829 (1987), the Ninth Circuit extended absolute prosecutorial immunity to social service caseworkers in initiating and pursuing child dependency proceedings. The Ninth Circuit reasoned:

> Although child services workers do not initiate criminal proceedings, their responsibility to exercise independent judgment in determining when to bring such proceedings, is not very different from the responsibility of a criminal prosecutor. The social worker must make a quick decision based perhaps on incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children. The social worker's independence, like that of a prosecutor, would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit. We therefore hold that social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings.

Id.

Attorney Defendants contend that "the acts complained of were intimately associated with the judicial phase of the Juvenile Court proceedings" and therefore Attorney Defendants are entitled to absolute prosecutorial immunity. Motion at 12:22-23, Doc. 9-1 at 12. The Court does not agree. Plaintiffs' Complaint alleges that Attorney Defendants made a concerted effort to prevent Plaintiffs from accessing certain reports and evidence in possession of the County. Complaint at ¶ 19. While it is true that Attorney Defendants were acting and advocating on behalf of the County in objecting to the release of certain records and evidence, the acts in question were not "quasi-prosecutorial" because the acts were not in preparation for the "initiation of judicial proceedings or for trial." The allegations in Plaintiffs' Complaint relate to Attorney Defendants (1) objecting to the release of certain evidence during the custody dispute

9

between Fox and Rogers in Family Court and (2) objecting to the release of evidence and reports in Juvenile Court. Complaint at ¶¶ 122-124, 127-134. Furthermore, the objections by Attorney Defendants in Juvenile Court were in response to Plaintiffs' filing a petition in order to gain access to CWS files and not during an investigation or initiation of child dependency proceedings. Id. at ¶¶ 125-127. Therefore, Attorney Defendants have not established that they are entitled to absolute immunity. Accordingly, Attorney Defendants' motion to dismiss Plaintiffs' first through fourth claims for relief based on absolute immunity is DENIED.

   2.   Defendants Leticia Castaneda and Erica Soto are not absolutely immune from Plaintiffs' federal law claims.

Similar to the Attorney Defendants, Defendants Leticia Castaneda and Erica Soto (collectively "Social Worker Defendants") seek to dismiss Plaintiffs' first, third and fourth claims for relief because they are absolutely immune from liability. Motion at 3:14-15, Doc. 27-1 at 3. Social Worker Defendants contend that their conduct in the Family Court "involved actions which were allegedly the basis for removal of the minor plaintiff" and therefore their "actions were clearly quasi-prosecutorial[.]" Id. at 3:25-26, Doc. 27-1 at 3.

The Court concludes that Social Worker Defendants are not entitled to absolute immunity because the acts complained of were not in preparation for the "initiation of judicial proceedings or for trial." Plaintiffs clarify in their opposition that the relevant allegations against Social Worker Defendants are that they (1) provided false statements to the Family Court mediator in the Family Law custody case between Fox and Rogers; and (2) provided confidential information from CWS files to Defendant Rogers. Opposition at 19:15-22, Doc. 28 at 19; see also Complaint at ¶¶ 95-98, 115. These allegations against Social Worker Defendants do not relate to the preparation for the initiation of judicial proceedings or for trial.

Accordingly, Social Worker Defendants' motion to dismiss Plaintiffs' first, third and fourth claims for relief based on absolute immunity is DENIED.

10

     3.     Plaintiffs have not stated a conspiracy claim under 42 U.S.C. § 1985(3).

Social Worker Defendants and Ron Castaneda seek to dismiss Plaintiffs' third claim for relief for conspiracy under 42 U.S.C. § 1985(3).[6] Motion at 6:15, Doc. 27-1 at 6.

A claim brought for violation of 42 U.S.C. § 1985(3) requires four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted). A racial, or perhaps otherwise class-based, invidiously discriminatory animus is an indispensable element of a § 1985(3) claim. Sprewell v. Golden State Warriors, 266 F.3d 979, 989 (9th Cir. 2001).

For the first time in the opposition, Plaintiffs state that their conspiracy claim under 42 U.S.C. § 1985(3) claim is based on gender discrimination against Fox. Opposition at 24-32, Doc. 28 at 24-32. Plaintiffs have not set forth any allegations in the Complaint that raise an inference of gender discrimination. At the hearing, Plaintiffs requested that they be granted leave to amend this claim. Accordingly, Social Worker Defendants and Ron Castaneda's motion to dismiss Plaintiffs' third claim for relief is GRANTED. Plaintiffs' third claim for relief is DISMISSED without prejudice and with leave to amend.

     4.     Plaintiffs' fourth claim for relief against Social Worker Defendants is not barred by Deshaney.

Social Worker Defendants seek to dismiss Plaintiff C.M.R.'s fourth claim for relief for state created danger. In the fourth claim for relief, Plaintiff C.M.R. brings a claim under 42 U.S.C. § 1983, alleging, *inter alia*, that Social Worker Defendants deprived her of her liberty without due process of law, in violation of her rights under the Fourteenth Amendment.

---

[6] Plaintiffs' third claim for relief is brought against all Defendants except County. This Court's order with respect to this claim applies to all Defendants that Plaintiffs brought this claim against.

"It is well established that the Constitution protects a citizen's liberty interest in her own bodily security." Kennedy v. Ridgefield City, 439 F.3d 1055, 1061 (9th Cir. 2006). Nevertheless, the Supreme Court in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 196 (1989) held that the Fourteenth Amendment's Due Process Clause "does not transform every tort committed by a state actor into a constitutional violation," and, as a general rule, "a State's failure to protect an individual against private violence simply does not constitute a violation of the due process Clause." One exception to this general rule is the "danger creation" exception that occurs when "state action affirmatively places the plaintiff in a position of danger, that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." Kennedy, 439 F.3d at 1061. The "danger creation" exception "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." Estate of Amos v. City of Page, 257 F.3d 1086, 1090 (9th Cir. 2001).

The crux of Social Worker Defendants' argument is that, as per DeShaney, they owed no duty to Plaintiff C.M.R. to prevent harm from occurring at the hands of Defendant Rogers, a private actor. Motion at 5:10-12, Doc. 27-1 at 5. In addition, Social Worker Defendants argue that the "danger creation" exception does not apply because Plaintiff C.M.R. was already in the custody of Defendant Rogers prior to May 12, 2009 when Defendant Rogers was granted primary physical custody. Reply at 2:10, Doc. 30 at 2. Thus, "[a]ny alleged actions or inactions of [Social Worker Defendants] did not expose [C.M.R.] to any danger to which she was not already" exposed. Id. at 2:4-5, Doc. 30 at 3. Finally, Social Worker Defendants argue that the "danger creation" exception does not apply because they did not actually remove C.M.R from Fox; the removal only occurred after a trial was held in the Family Court. Id. at 3:8-9, Doc. 30 at 3.

In DeShaney, a minor was removed temporarily from his father's custody and was later returned. DeShaney, 489 U.S. at 192. The Supreme Court found no liability against the state, in part, because when the minor was returned to his father's custody, the state placed him in no worse position than that in which he would have been had it not acted at all. Id. at 201. The

12

Supreme Court concluded that "[w]hile the State may have been aware of the dangers that [the minor] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." Id.

In this case, the allegations in the Complaint suggest more than an inactive role by the Social Worker Defendants. Plaintiffs allege that Social Worker Defendants' conduct was for the purpose of assuring that Rogers retained custody of C.M.R. Complaint at ¶ 18. Thus, the allegations that Social Worker Defendants (1) failed to investigate allegations of child abuse; (2) suppressed reports of child abuse; and (3) recommended that Rogers be granted physical custody of C.M.R. suggests that Social Worker Defendants played a part in the creation of danger and rendered C.M.R. more vulnerable to the danger of Rogers. Id. at ¶¶ 18 and 160; see also Currier v. Doran, 242 F.3d 905, 919-920 (10th Cir. 2001) (concluding that social worker's alleged failure to investigate allegations of child abuse, together with social worker's recommendation to court that father assume legal custody, were sufficient to state a § 1983 due process claim based on a state-created danger theory); Ford v. Johnson, 899 F. Supp. 227, 233 (E.D. Pa. 1995) (holding that a constitutional claim was stated by alleging that the social workers failed to investigate the father and failed to report information to the juvenile court which would have disqualified the father from gaining custody).

Accordingly, Social Worker Defendants' motion to dismiss the fourth claim for relief based on DeShaney is DENIED.

5. Plaintiffs have not stated a claim against Ron Castaneda under 42 U.S.C. § 1983.

Defendant Ron Castaneda moves to dismiss Plaintiffs' first and fourth claims for relief against him under 42 U.S.C. § 1983. Defendant Ron Castaneda argues that "there are no allegations of conduct on his part" that violated any "of plaintiffs' constitution rights[.]" Motion at 5:19-20, Doc. 27-1 at 5.

"To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." Wood v. Ostrander,

13

879 F.2d 583, 587 (9th Cir. 1989) (citation omitted).

Plaintiffs conceded at the hearing that the only allegations against Ron Castaneda occurred in 2007. Complaint at ¶¶ 36-40. The relevant allegations are that Defendant Ron Castaneda (1) illegally and improperly accessed information about Skelton; (2) filed a report that tried to justify Rogers taking C.M.R. to urgent care and the hospital for rape examinations; and (3) possibly planted drugs in Skelton's car. Id. at ¶¶ 17, 36-40. These allegations are insufficient to demonstrate that Defendant Ron Castaneda's conduct violated either Fox or C.M.R.'s constitutional rights. Accordingly, Defendant Ron Castaneda's motion to dismiss Plaintiffs' first and fourth claims for relief is GRANTED. Dismissal is without prejudice and with leave to amend.

In their supplemental brief, Plaintiffs clarify that they are seeking to hold Ron Castaneda liable under a conspiracy theory pursuant to 42 U.S.C. § 1983. Plaintiffs' Supplemental Brief at 13:25, Doc. 40 at 13. Plaintiffs state that "Ron Castaneda has acted in concert with all Defendants to deprive Plaintiffs of their constitutional rights." Id. at 14:3-4, Doc. 40 at 14.

Plaintiffs' Complaint creates confusion as to whether the first and fourth claims for relief are conspiracy claims under 42 U.S.C. § 1983 or whether Plaintiffs are seeking to hold each Defendant liable for their own individual conduct against Fox and C.M.R. To the extent that Plaintiffs are attempting to bring conspiracy claims in their first and fourth claims for relief under 42 U.S.C. § 1983, Plaintiffs are granted leave to amend. Plaintiffs are instructed to clarify in any amended complaint whether they are bringing conspiracy claims under 42 U.S.C. § 1983 and must sufficiently allege facts establishing the conspiracy and a deprivation of Plaintiffs' constitutional rights.[7]

---

[7] A conspiracy under 42 U.S.C. § 1983 is "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law." Dyess ex rel. Dyess v. Tehachapi Unified Sch. Dist., No. 1:10-CV-00166-AWI-JLT, 2010 WL 3154083, at *7 (E.D. Cal. Aug. 6, 2010). In order to "recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also a deprivation of rights; pleading and proof of one without the other will be insufficient." Id. (citing to Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006).

   6.   Plaintiffs have not alleged facts in their Complaint demonstrating or excusing compliance with the Government Claims Act.

All Defendants seek to dismiss Plaintiffs' state law claims for failure to comply with the Government Claims Act ("GCA").[8]

In this case, on September 17, 2010, Plaintiffs submitted a claim form to the Clerk of the Board of Supervisors of Tulare County.[9] On September 21, 2010, the claim was returned as untimely because the claim was not presented within six months of the accrual of the cause of action. Plaintiffs submitted another claim form on October 14, 2010, which was substantially the same as the September 17, 2010 claim form. The second claim form was returned as untimely on October 27, 2010. Both the September 21 and October 24, 2010 notices from the County

---

[] "To establish a conspiracy, a plaintiff must demonstrate the existence of an agreement or 'meeting of the minds' to violate constitutional rights." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1301 (9th Cir. 1999). "The defendants must have, by some concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming another which results in damage." Id. This agreement or meeting of the minds may be inferred on the basis of circumstantial evidence, such as the actions of the defendants. Id. A showing that defendants committed acts that "are unlikely to have been undertaken without an agreement" may support the inference of a conspiracy. Id. Conclusory allegations of conspiracy, however, are not enough to support a § 1983 conspiracy claim. Burns v. Cnty. of King, 883 F.2d 819, 821 (9th Cir. 1989). A plaintiff must plead "enough factual matter (taken as true) to suggest that an agreement was made." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

[8] The following state law claims are relevant to this section of the Court's order. In the fifth claim for relief, Plaintiffs filed a negligent retention and supervision claim against the County, Leticia Castaneda and John Rozum. In the sixth claim for relief, Plaintiffs filed an intentional infliction of emotional distress claim against the County, Leticia Castaneda, Erica Soto, Ron Castaneda and John Rozum. In the seventh claim for relief, Plaintiffs filed a negligence claim against the County, Leticia Castaneda, Erica Soto, Ron Castaneda and John Rozum. In the eighth claim for relief, Plaintiffs filed a negligent infliction of emotional distress claim against the County, Leticia Castaneda, Erica Soto, Ron Castaneda and John Rozum. In the eleventh claim for relief, Plaintiffs filed a conspiracy claim against the County, Leticia Castaneda, Erica Soto and Ron Castaneda. There is no dispute that the GCA applies to these claims.

[9] In connection with their motion to dismiss, Defendants County and Attorney Defendants filed a request for judicial notice, asking the Court to take judicial notice of Plaintiffs' claim forms filed with the Clerk of the Board of Supervisors of Tulare County. See Doc. 9-2. Courts may take judicial notice of matters of public record. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). The documents submitted by these Defendants are all matters of public record. Therefore, judicial notice of these documents is taken. Facts related to the filing of Plaintiffs' claim forms are taken from these documents.

15

expressly stated that no action was taken with respect to Plaintiffs' claims and explained that Plaintiffs only recourse was to apply for leave to present a late claim. Instead of filing a petition for leave to present a late claim, Plaintiffs commenced the present action on March 24, 2011.

Where compliance with the GCA is required, the plaintiff has the burden of pleading and proving compliance. Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). Thus, the "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action." State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1239 (2004).

In their Complaint, Plaintiffs allege that they have "complied with the Government Tort Claims statutes of California, having had the most recent claim denied on October 27, 2010." Complaint at ¶ 3. While a court generally accepts all allegations as true in the complaint on a motion to dismiss, a court need not accept as true allegations that are contradicted by documents that are referenced in the complaint or that are properly subject to judicial notice. Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). Plaintiffs' allegation that their claim forms were denied is contradicted by the County's notices that this Court has taken judicial notice of. The County's notices explicitly stated that no action was taken on their claims.

In their opposition, Plaintiffs contend that they filed a timely claim. Opposition at 3:22, Doc. 10 at 10. Plaintiffs argue that they dispute the County's determination of untimeliness and thus were required to file a complaint for damages in order to raise this issue. Id. at 4:22-24, Doc. 10 at 11 (citing to Toscano v. Cnty. of Los Angeles, 92 Cal. App. 3d 775, 782-83 (1979)). In their supplemental brief, Defendants County and Attorney Defendants raise the issue that the issue of timeliness was not raised by Plaintiffs' Complaint. Supplemental Brief at 4:7, Doc. 37 at 4. These Defendants argue that Plaintiffs did not dispute the County's determination of untimeliness until they were faced with a motion to dismiss under Rule 12(b)(6). Id. at 5:22-23, Doc. 37 at 5.

The Court agrees with these Defendants that Plaintiffs failed to allege facts excusing compliance with the GCA in their Complaint. Plaintiffs did not raise the argument that they are

16

challenging the County's determination of untimeliness until their opposition. See <u>Broam v. Bogan</u>, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (facts raised in opposition papers may not defeat a motion to dismiss, but may be considered by the court to determine whether dismissal should be with or without prejudice). Accordingly, Defendants' motions to dismiss Plaintiffs' state law claims are GRANTED. Plaintiffs' fifth, sixth, seventh, eighth and eleventh claims for relief are DISMISSED without prejudice and with leave to amend.[10] The Court instructs Plaintiffs that any amended complaint must allege facts demonstrating or excusing compliance with the GCA.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' motions to dismiss are GRANTED in part and DENIED in part consistent with this order. Any amended complaint must be filed within twenty-one (21) days of the filing of this order.

IT IS SO ORDERED.

Dated:   October 25, 2011

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[10] In light of this conclusion, the Court will not address Defendants' remaining arguments regarding whether Plaintiffs' state law claims should be dismissed.

17