**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA FOX, ON BEHALF OF HERSELF AND AS NEXT FRIEND TO C.M.R., A MINOR,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF TULARE, LETICIA CASTANEDA, ERICA SOTO, RON CASTANEDA, JULIA LANGLEY, CAROL HELDING, JOHN ROZUM, STEVEN ROGERS and DOES 1-100,<br><br>Defendants. | Case No. 1:11-cv-00520-AWI-SMS<br><br>ORDER RE: PLAINTIFF'S MOTION TO RECONSIDER<br><br>(Doc. 99) |

Before the Court is Plaintiff's August 19, 2013 motion to reconsider its *in camera* review of personnel files. Doc. 99. For the reasons below, the Court grants the request for reconsideration. However, only limited production is ordered, as set forth below.

**PROCEDURAL BACKGROUND**

On June 20, 2013, Plaintiff filed her motion to compel, followed the same day by an amended motion. Docs. 79, 80. This motion was opposed only by Defendants Tulare County, Julia Langley, Carol Helding, and John Rozum (hereinafter "Tulare Defendants"). The parties filed their joint Local Rule 251 stipulation and exhibits on July 10, 2013. Doc. 85, 86. There was no participation by Defendants Ron Castaneda, Leticia Castaneda, or Erica Soto (hereinafter "Castaneda Defendants").

1

On July 19, 2013, the Court ordered *in camera* review of personnel files, instructed Plaintiff to provide certified questions for review, and stayed discovery and discovery deadlines. Doc 89, 92. By order of July 24, 2013, the Court disposed of certain discovery requests and ordered *in camera* review as to others. Doc 93. By order of August 15, 2013, the Court completed its *in camera* review of personnel files, ordering no discovery from these. Doc. 97.

On August 19, 2013, Plaintiffs moved for reconsideration of this *in camera* review. Doc 99. On August 27, 2013, the Weakley Defendants filed an opposition. Doc. 105. On September 11, 2013, Plaintiffs filed a reply. Doc. 114. The Court deemed the motion suitable for decision without oral argument and vacated the hearing on the matter. Doc. 113.

## STANDARD FOR RECONSIDERATION

A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper,* 254 F.3d 882, 889 (9th Cir. 2001); *Smith v. Massachusetts*, 543 US 462, 475 (2005). The court may do so "at any time" before the entry of final judgment. Fed. R. Civ. P. 54(b); *see* Local Rule 230(j) (procedural requirements). This allows district courts "to correct not only simple mistakes, but also decisions based on shifting precedent, rather than waiting for the time-consuming, costly process of appeal." *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000). Consistent with this purpose, courts generally avoid exercising this power unless they learn of newly discovered evidence, an intervening change in controlling law, or reason to believe they committed clear error. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (applying this standard to motion to "alter or amend a judgment" under Fed. R. Civ. P. 59(e)); *Pit River Home & Agr. Co-op. Ass'n v. United States*, 30 F.3d 1088, 1096-97 (9th Cir. 1994) (under law of the case doctrine, same standard applies to motion to reconsider interlocutory order).

## THE COURT'S PRIOR ORDERS

Although the parties refer only to the Court's August 15, 2013 *in camera* report, the place to begin is the Court's July 24, 2013 order, wherein the Court considered whether to order production of specific documents in Leticia Castaneda's personnel file (Request to Produce Set 4, RFPs ## 11-17). The Tulare Defendants objected on the grounds of official information, privacy, and relevance.

The Court found it unnecessary to consider these objections, however. In denying discovery, the Court explained:

> Defendant represents that Plaintiffs "clearly are already in possession of" [Leticia Castaneda's personnel file], which they have "acquired by subpoena." Based on this representation, these motions to compel are denied.

Three weeks later, the Court received the personnel files of the six individual defendants. The Court denied production from these files, explaining that "none of this material appears reasonably calculated to lead to the discovery of admissible evidence. It also raises valid privacy concerns."

## **PLAINTIFF'S MOTION FOR RECONSIDERATION**

Plaintiff seeks several specific documents in Leticia Castaneda's personnel file: two letters of counseling, various acknowledgements of confidentiality policy, and her job applications for her current position.[1] Plaintiff does not identify which Request for Production these documents fall under, but the Court observes that these documents generally relate to Plaintiff's Request to Produce Set #2, which the Court summarizes below:

> <u>RFP 1, Question 1</u>: "All ... records … that ... reflect any instance of relevant conduct." Nearly a dozen examples are provided, ranging from "racism" to "dishonesty" to "other instances of conduct no matter how named."
> <u>RFP 1, Question 2</u>: Complaints of any items from (1) which constitute *mis*conduct.
> <u>RFP 1, Question 3</u>: [Defines the scope of documents sought for (1) and (2)].
> <u>RFP 3, Question 1</u>: Records of any training attended.
> <u>RFP 4, Question 1</u>: All personnel records.

## **NEW EVIDENCE**

Plaintiff filed her motion to compel on June 20, 2013. Leticia Castaneda was deposed on July 15. The "new facts" that Plaintiff alleges are that Ms. Castaneda, at her deposition, refused to answer questions about the above-mentioned counseling letters (which were in Plaintiff's possession). She also admitted to not having a degree which (according to Plaintiff) the State requires for her position. She also testified as to the manner in which she and her office secured confidentiality waivers from clients.

---

[1] On August 19, 2013, Plaintiff requested that these by filed under seal. Doc 99-5. By previous order, the Court granted this request.

On July 19, Plaintiff's attorney completed a ten-day marathon session of fifteen depositions. On the same day, he received the certifications of Ms. Castaneda's questions. Also on that day, the Court ordered that the personnel files be delivered for *in camera* review by August 16, 2013. The Court directed Plaintiff

> to forward to the Court the "...questions certified for the purpose of compelling testimony from this week's depositions...," believing such information to be helpful to the Court as she continues to work through the many disputed document requests.

The Court received the personnel files from the Tulare Defendants on August 13, 2013. On August 15 it ordered no production from this material. At no time prior to this date did the Court receive certified questions from Plaintiff.

## **RECONSIDERATION IS APPROPRIATE**

Although Plaintiff relies upon Rule 60(b)(2), this rule does not apply to non-final orders. *See Connors v. Iquique U.S.L.L.C.*, 2005 WL 3007127 (W.D. Wash. Nov. 9, 2005) (citing the Rule's Advisory Committee Notes). Instead, as noted above, the Court applies its plenary authority to reconsider interlocutory orders, guided by Rule 54 and the law of the case doctrine.

Plaintiff asserts that reconsideration is available where there are "facts unavailable at the time of the original motion." However, she cites no cases in her motion. While there does not appear to be consensus as to the exact timing of the deadline, district courts have favorably cited the Local Rules of the Central District of California, which specifies that the facts must have been available by the time of the court's decision. *See*, *e.g., Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 584 (D. Ariz. 2003). This deadline seems particularly apt in this case, given that the Court specifically ordered Plaintiff to supply any certified questions for the benefit of its *in camera* review. Plaintiff possessed these questions on the day of the Court's order, yet failed to provide them to the Court for four weeks, despite the Court's order that Plaintiff do so for the specific purpose of aiding in its *in camera* review. On these facts, Plaintiffs have not described a basis for reconsideration.

Nevertheless, the briefing on this question does reveal a secondary issue which is significant enough to require the Court to reconsider its order. As noted above, when the Court issued its first discovery order, it denied certain RFPs relating to Ms. Castaneda's file "based on th[e]

4

representation" that Plaintiffs "clearly are already in possession of" Leticia Castaneda's personnel file. This representation was by the Tulare Defendants in a portion of the Rule 251 stipulation entitled "Shortcut to Resolution." Although the Weakley Defendants did not participate in that issue, they too cite this fact, in their opposition to the present motion to reconsider and in the declaration of Ms. Dillahunty.

Now, for the first time, the Court perceives that Plaintiff may not "possess" Ms. Castaneda's file in a fashion that allows her to rely upon it as discovery in this case. Plaintiff refers to letters, sent by the Castaneda Defendants. In these letters, Defendants indicate that the copy of Ms. Castaneda's file that is in Plaintiff's possession should be destroyed since it was not ordered produced by the Court.

Although the Court's August 15 order cited only "privacy concerns" and "the discovery of admissible evidence," the Court also tacitly assumed that further production of Ms. Castaneda's file would be redundant. Because this assumption is called into question, reconsideration is proper.[2]

**DISCOVERY STANDARD**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter . . . . The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

In a federal question case, privileges asserted in response to discovery requests are determined under federal law, not the law of the forum state. Fed. R. Evid. 501; *United States v. Zolin*, 491 U.S. 554, 562 (1989); *Kerr v. United States District Court for the Northern District of California*, 511 F.2d 192, 197 (9th Cir. 1975). Federal common law recognizes a qualified privilege

---

[2] In their Rule 251 stipulation, the Tulare Defendants referred to a September 18, 2009 order by Tulare County Superior Court Judge Jennifer Shirk, which they attached as an exhibit. *See* Def. Ex. "H" to Rule 251 stip. Defendants indicated that, in this order, Judge Shirk released the names of three individuals who made complaints against Ron Castaneda. The Court now observes that Defendant's Exhibit "H" may have been mislabeled; the referenced *in camera* review by Judge Shirk in fact occurred on September 8, 2009 and appears as Plaintiffs' "Exhibit A" to the Motion to Compel. *See* Doc. 86. Reviewing this order, the Court here clarifies that none of these three names appear in the personnel file of Ron Castaneda provided to the Court.

for official information, also known as the governmental privilege, or state secret privilege. *Id.* at 198. The application of the official information privilege is "contingent upon the competing interests of the requesting litigant and subject to disclosure especially where protective measures are taken." *Id*. Ordinarily, federal courts also recognize a constitutionally-based right of privacy that can be raised in response to discovery requests. *See Breed v. United States District Ct. for Northern District*, 542 F.2d 1114, 1116 (9th Cir. 1976) (balancing the invasion of minor's privacy rights against the court's need for ward files); *Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548, 550–51 (E.D.Cal.1990) (balancing individual's right of privacy against public's need for discovery in employment discrimination case).

## *IN CAMERA* REVIEW

**Letters**

The first letter is dated April 11, 2007 and appears as Exhibit 1 to Plaintiff's motion to file under seal. As Plaintiff notes, this was about an internal complaint against Ms. Castaneda for badmouthing the then Deputy Director of Child Welfare Services on company time. Plaintiff argues that this letter is relevant to her credibility because she "denied the allegations" but "the investigation determined that the complaint was valid and was upheld." In fact, the letter indicates that Ms. Castaneda admitted to some allegations, and made no findings of fact beyond stating "allegations." In a handwritten statement in the margin of the letter, Ms. Castaneda raises the failure to investigate "her side of the story." Plaintiffs add that this failure implicates "investigations initiated, overseen and reviewed for disposition by Ms. Castaneda about Plaintiffs in this case."

The second letter, dated May 17, 2005, appears as Exhibit 2. According to Plaintiff, this letter pertained to Ms. Castaneda

> being rude and abrasive towards clients and other members of the CWS office. This is a matter of concern in this case, as that is the same conduct Ms. Fox alleges Ms. Castaneda exhibited towards her on the two occasions at which Ms. Fox was called into the CWS office and confronted by Ms. Castaneda.

Plaintiff mischaracterizes this letter. It does not relate to behavior towards clients. As the later April 2007 letter makes clear, the issue in May 2005 was conduct towards other employees.

6

Plaintiff exaggerates the character of both letters. Neither relates to the case in the manner which he describes, and any connection is too tenuous to render either letter discoverable. Nothing in Plaintiff's expert report suggests otherwise. These two documents are not ordered produced. (Furthermore, although Ms. Castaneda's file contains no documents which are responsive to requests nos. 10-17 from Set #4, the Court can determine from these two letters that any documents responsive to those requests would be equally irrelevant.)

**Confidentiality Policy Acknowledgments**

Plaintiff refers to several acknowledgements of County confidentiality policy, provided as Exhibit 3 to her motion to file under seal. The Court notes that these acknowledgments relate to the following portions of the complaint, alleging that Defendants Leticia Castaneda and Erica Soto "divulged, in the presence of Defendant Steven D. ROGERS, the contents of ... confidential CWS files," which included "false information that he later used to help him in his quest for custody of Plaintiff C.M.R." The Court agrees that these documents should be produced as requested, under seal and pursuant to the protective order in place.

However, the Court is unable to find these documents in either Ms. Castaneda's or Ms. Soto's physical personnel files provided for *in camera* review. Therefore, the Court orders production of these documents—and of similar documents pertaining to Ms. Soto—to the extent that such documents are actually or constructively in Defendants' possession, custody, or control. *See FRCP 26; see also United States v. Int'l Union of Petroleum & Indus. Workers,* 870 F.2d 1450 (9th Cir.1989) (defining "control" as "the legal right to obtain documents upon demand").

**Resume**

Specifically, Plaintiff refers to the "application and supplementary application Ms. Castaneda submitted and dated May 15, 2001, for the position she currently holds as 'Team Leader.' " These materials are provided as Exhibit 4 to her motion to file under seal. Relying in part on a review of this material, Plaintiff's expert opined that the Tulare County Board of Supervisors "waived all educational requirements for Child Welfare Services Supervisors when Ms. Castaneda was promoted" and therefore "did not insure that their employees, who make critical decisions

about the safety of children, met the State regulatory requirements for the Emergency Response and Family Maintenance programs for either education or experience equivalent to an MSW."

Without passing on the validity of this argument, the Court finds there is sufficient basis for ordering that these materials be discovered, under seal and pursuant to the protective order in place.

### Re-Review of Soto and Castaneda Files

The Court has re-reviewed Ms. Castaneda's and Ms. Soto's entire files. It has also re-considered all contested RFPs for which the Court previously relied to some extent on the mistaken belief that Plaintiffs possessed Ms. Castaneda's file for use as discovery in this case. In this review, the Court took into account Plaintiff's specific interest in documents relating to confidentiality; to Ms. Castaneda's qualifications for the "team leader" position; to complaints of failures to investigate; and to credibility issues. No further production is ordered.

### CONCLUSION

For the foregoing reasons, the Court finds as follows:

1. Regarding the motion for reconsideration (doc. 99), Defendants shall produce the personnel documents in sealed Exhibit 4 and, to the extent they possess responsive documents, the personnel documents in sealed Exhibit 3 and analogous documents as to Ms. Soto. No further production from the Court's August 15, 2013 *in camera* review of personnel files is granted.

2. Defendants may arrange to retrieve the personnel files from the Court's chambers.

IT IS SO ORDERED.

Dated:   **September 17, 2013**              /s/ Sandra M. Snyder
                                                                    UNITED STATES MAGISTRATE JUDGE