**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA FOX, ON BEHALF OF HERSELF AND AS NEXT FRIEND TO C.M.R., A MINOR,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF TULARE, LETICIA CASTANEDA, ERICA SOTO, RON CASTANEDA, JULIA LANGLEY, CAROL HELDING, JOHN ROZUM, STEVEN ROGERS and DOES 1-100,<br><br>Defendants. | Case No. 1:11-CV-00520-AWI-SMS<br><br>ORDER REGARDING PLAINTIFF'S AMENDED MOTION TO COMPEL<br><br>(Doc. 80) |

On June 20, 2013, Plaintiff filed the instant motion to compel. Doc. 80. The parties filed their joint Local Rule 251 stipulation and exhibits on July 10, 2013. Doc. 85, 86. On July 19, 2013, the Court ordered *in camera* review of personnel files. This is addressed in other orders.

In its July 24, 2013 order on the motion to compel, the Court identified waivers of privilege. Doc. 93. The first portion of this order clarifies the scope of these waivers. Any inconsistencies between the two orders shall be resolved in favor of this order.[1] The second portion of this order consists of the Court's *in camera* review of the documents provided by Tulare County in response to that order. As explained below, no production is ordered.

---

[1] Insofar as either party requests reconsideration of these issues, these requests are denied. Because Plaintiffs were reasonable to believe that Defendants were requesting reconsideration, the Court denies Defendants' request (doc. 110) to refuse filing of Plaintiffs' "Reply" (doc. 108).

1

**SCOPE OF WAIVERS**

In its prior order, the Court found that waivers occurred when the following were disclosed:

1. Handwritten notes recorded by County Counsel Carol Helding on December 3, 2008, of a conversation between herself and social worker Leticia Castaneda. The Tulare County Defendants disclosed these to Plaintiffs in discovery responses. Defendants acknowledge that they disclosed these in discovery "to support [their] affirmative defense of qualified immunity." Doc. 85 at 21.

2. A memo prepared by County Counsel John Rozum and emailed to social workers on December 4, 2008, apparently reflecting the December 3 notes. The subject matter of both communications was whether there were sufficient facts to detain C.M.R. based on Welfare and Institutions Code §300 (b) or (c) (i.e., generally, whether C.M.R.'s mother had put her at substantial risk of serious physical or emotional harm) and also whether to seek a warrant. The Court found that social workers had disclosed the December 4 memo to nonparty Lourdes Dawson, a Family Court mediator. The Court inferred that they disclosed this document so that Ms. Dawson would consider these facts when making a custody recommendation to the Family Court.

Defendants now essentially ask the Court to reconsider this decision, asserting that "it has never been determined how Lou Dawson came into possession of the December 4, 2008 writing." Doc. 103 at 4. Both parties have had two opportunities to brief this issue, yet it remains murky. On the one hand, the Court acknowledges that it erred in concluding that Ms. Dawson possessed the memo prior to April 2009.[2] This fact argues in favor of reconsideration. On the other hand, when the Court reached this conclusion, there was no indication that the parties disputed the basic premise that Ms. Dawson had received the memo from social workers.[3] Now, although Defendants offer suggestions as to how "*Plaintiffs* initially acquired the writing," they again do not question

---

[2] Plaintiffs' own exhibits strongly implied that Ms. Dawson had faxed a copy of the December 4 memo to CWS in April 2009. The first page of Plaintiffs' "Exhibit 7" is a fax cover sheet in which Ms. Dawson indicates that she had attached "a copy of what I had sent ..." *See* Doc. 91, ex. 7. The second page of the exhibit is the December 4 memo. The Court found that "the second page of the fax is, apparently, the referenced attachment." In fact, the Court was mistaken; the two documents are entirely unconnected. They should not have been filed as a single exhibit.

[3] Prior to the Court's initial order on privilege, Defendants simply indicated that "[t]here is no evidence that the social workers *intentionally* waived the attorney-client privilege by providing the document to the Family Court mediator." Doc. 85 at 20 (emphasis added). Elsewhere, in correspondence with Plaintiffs, Defendants acknowledged in general terms that privilege was waived *intentionally*. Doc. 86-2 at 20. As for Defendants' statement that Plaintiffs "already had" the December 4 memo at a certain point (doc. 85 at 21), this is not inconsistent with intentional disclosure by Defendants.

Plaintiffs' contention as to how *Ms. Dawson* obtained the memo. The Court sees no reason to reconsider its initial finding of intentional waiver.

3. Handwritten notes by County Counsel Carol Helding and a subsequent typed memorandum shared with Leticia Castaneda and Erica Soto, both summarizing a conversation between these persons on July 15, 2009. The Tulare County Defendants disclosed these to Plaintiffs in discovery responses. Defendants acknowledged waiver but again argued that the scope was limited to the defense of qualified immunity. Doc. 86-2 at 20.[4]

**Attorney-Client Privilege.**

The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice. *See American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 745 (Fed.Cir.1987). The privilege belongs solely to the client, and thus may be waived only by the client. *In re von Bulow*, 828 F2d 94, 100 (2nd Cir. 1987). A waiver extends to undisclosed communications or information when the waiver is intentional, the undisclosed and disclosed information or communications relate to the same subject matter, and fairness dictates that the disclosed and undisclosed matters be considered together. FRE 502(a)(1)-(3). The rationale for subject matter waivers is "so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). However, "[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Id.* at 1349-50.

Defendant Tulare County intentionally disclosed privileged attorney-client communications from both December 2008 and from July 2009. However, although the waiver is a subject-matter waiver, neither the scope of relevant subject matter nor the scope of the waiver is unlimited. *See* FRE 502(a) (citing fairness); *Fort James Corp.*, 412 F.3d at 1349 (citing circumstances of disclosure,

---

[4] The Court rejected Defendants' suggestion that privileges are only waived when communications are used offensively but not when used defensively. *See Bittaker v. Woodford,* 331 F.3d 715, 719 (9th Cir.2003) (attorney-client privilege is impliedly waived where client asserts claim *or defense* that places at issue the nature of the privileged material).

3

nature of legal advice sought, and prejudice). The nature of the legal advice sought was whether there was sufficient basis to detain or seek a warrant. The discussion also included the degree of danger to C.M.R. (*e.g.*, County Counsel Helding writes in her July 2009 notes: "Team leader wants to know if [should] detain today. I told her no [immediate] risk today and if did not find risk yesterday, then [should] not detain today without a warrant ..."). The disclosures were made in discovery and (under uncertain circumstances) to Ms. Dawson. The purpose of the disclosures was to influence a decision as to C.M.R.'s custody in the family law matter and, ostensibly, to show objective reasonableness entitling the Defendant attorneys to the defense of qualified immunity. In terms of fairness or prejudice, it is significant that both sets of disclosures relate to conversations between only two clients and two attorneys—social workers Soto and Castaneda, and County Counsel Helding and Rozum.

In light of these factors, the waiver of attorney-client privilege extends only to communications made for the purpose of affecting decisions pertaining to C.M.R.'s safety, including through decisions as to custody, placement, or detention. Furthermore, the privilege was waived only by Ms. Soto and Ms. Castaneda. (Although the Court previously attributed the waiver to the County, the Court also indicated that the waiver should not operate differently than if it had been made only by individuals.) To the extent that a privileged document relates primarily to Plaintiffs' requests to disclose documents, the Court here clarifies that such proceedings are not related to decisions affecting C.M.R.'s safety in the manner intended by this order.

**Attorney Work-Product Protection.**

The attorney work product doctrine protects trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews. FRCP 26(b)(3); *Hickman v. Taylor*, 329 US 495, 510–511 (1947); *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F3d 289, 294 (6th Cir. 2002). A waiver extends to *undisclosed* communications or information when the waiver is intentional, the undisclosed and disclosed information or communications relate to the same subject matter, and fairness dictates that the disclosed and undisclosed matters be considered together. FRE 502(a)(1)-(3).

4

In discussing this protection, the parties in their Rule 251 stipulation relied on the same analysis as applied to the attorney-client privilege. Plaintiffs argued that Defendants waived work-product protection "for the same reasons," and Defendants too cited "an analysis similar to that offered in connection with the attorney-client privilege."[5]

Having found that the disclosures constituted a waiver, the Court must clarify the scope of the waiver. Defendants argued that no subject matter waiver occurred, and that if any such waiver did occur it should be limited to the defense of qualified immunity. Doc. 85 at 22-23. Plaintiffs argued that the waiver extends to the "good faith" beliefs of the attorneys. Plaintiffs' characterization was too broad. As Defendants correctly noted (doc. 85 at 21, 23) and contrary to Plaintiffs (doc. 85-3 at 28), qualified immunity is an objective inquiry. *See Tapley v. Collins*, 211 F.3d 1210, 1215 (11th Cir. 2000) ("Qualified immunity is an objective test, ... while good faith defenses are subjective in nature.")

The Court concludes that any waiver should be defined narrowly; the disclosed notes consist essentially of notes of communications with the social worker clients, and so fairness does not require any disclosure beyond the waiver of attorney-client privilege described above. Going forward, the Court will not analyze this waiver separately.

/ / / /

/ / / /

/ / / /

---

[5] Defendants now argue that no waiver of work-product protection occurred, again emphasizing uncertainties of how Ms. Dawson came to obtain the December 4 memo. Again, these stated uncertainties about the disclosure to Ms. Dawson do not provide a basis for reconsideration. Furthermore, although the Court's previous discussion of work-product protection only referred to this memo, it was not the Court's intention to imply that this memo was the only basis for waiver. The Court also acknowledged Defendant's admission that the December 3 handwritten notes were "identical" to this memo, and in a footnote the Court stated that any waiver resulting from disclosure of the July 15 materials would be "coextensive" with the waivers resulting from the other disclosures.

5

## SPECIFIC REQUESTS

**Request Set 4, #4-#5**

**Summary of Request:**

Entire County Counsel file pertaining to Fox v Rogers (Superior Court case) and Matter of CMR (Juvenile Court case)

**The Court's Prior Order:**

Defendant shall determine whether any of the requested documents are now discoverable in light of the waiver of the attorney-client and work-product privileges described above. To the extent that Defendant believes that any of these documents are nevertheless protected by the Official Information Privilege, Defendant shall submit these to the Court for *in camera* review. Otherwise the motion is denied.

**Order After *In Camera* Review:**

As a preface to their response, Defendants request clarification of the scope of the waivers. As to the waiver of attorney-client privilege, Defendants note that the Attorney Defendants are not in a position to determine which matters communicated to them would also be relevant to custody determinations of C.M.R., because "the County Counsel does not take any position on custodial placement, and never made any recommendations whatsoever regarding custody determinations."

The Court has clarified that the waiver extends to communications between County Counsel and Ms. Soto or Castaneda, and that it extends to communications made for the purpose of affecting decisions pertaining to C.M.R.'s safety, including through decisions as to custody, placement, or detention. As an example, the Court referred to Ms. Helding's July 2009 notes, in which she wrote: "Team leader wants to know if [should] detain today. I told her no [immediate] risk today and if did not find risk yesterday, then [should] not detain today without a warrant ...". Communications in this category should either be produced or submitted for *in camera* review.

Defendants have provided several Pro-Law entries for the Court's review. Each represents a valid claim of privilege, and none is subject to the waiver for client communications described above. No disclosure of the materials provided is ordered.

**Request Set 4, #6**

**Summary of Request:**

All documents held by Tulare CWS and HHS pertaining to any abuse allegations made by Plaintiff Fox against any adult male [at any time]

**The Court's Prior Order:**

To the extent that responsive documents have not been disclosed solely on account of the official information privilege or Welfare and Institutions Code section 827, Defendant shall submit these to the Court for *in camera* review. Otherwise the motion is denied.

**Order After *In Camera* Review:**

Defendants explain that California Welfare and Institutions Code § 827 does not allow disclosure of certain CWS files even to this Court. However, "Defendant has searched its records for files involving Pamela Fox to the extent possible" and could identify no files identifying her as a reporting party. No disclosure is ordered.

**Request Set 4, #8**

**Summary of Request:**

A "transaction listing report" and time records

**The Court's Prior Order:**

In its discovery response, Defendant's principal objections were the official information privilege and privacy. Stip. at 65. Defendant also noted that a "transactional listing report" is not an existing document but must be specifically generated. Later, in its response to Plaintiff's motion to compel, Defendant raised the attorney client privilege for the first time. *Id*. at 143. In light of this late assertion of the privilege, Defendant shall submit this document to the Court for *in camera* review.

**Order After *In Camera* Review:**

The Court ordered *in camera* review of this document in light of Defendants' late assertion of privilege. Defendants have clarified: "It must be emphasized that a 'Transaction Listing Report' does not exist in the usual course of business. It is a report generated by a County accountant ... There was no 'Transactions Listing Report' as requested by Plaintiffs that could be objected to as attorney-client

7

privilege or work product. Although the <u>information</u> is clearly privileged, there is no existing document that could be privileged."

Upon review, the Court concludes that the entries within this document are protected work-product, and they contain no communications subjecting them to disclosure. No disclosure is ordered.

**Request Set 4, #18-#19**

**Summary of Request:**

Documents identified in certain "authorization to release" forms signed by Steven Rogers

**The Court's Prior Order:**

Defendant is ordered to clarify its response to these requests. On the one hand, Defendant states that it "has produced the requested records in County's possession and control in this litigation and Plaintiffs are believed to be in possession of all records identified in the authorizations." Stip. at 145. The Court is inclined to rely on this representation and deny the motion. However, Defendant also cites, e.g., the lack of a protective order as a reason why it cannot disclose responsive documents. This response implies that certain of the requested documents have not been produced, and begs for clarification.

**Order After *In Camera* Review:**

Insofar as Plaintiffs are requesting documents reflecting exchanges of information pursuant to certain authorizations, Defendants state that they have no such documents. The Court orders no further disclosure of this category of documents.

Insofar as Plaintiffs are requesting writings identified by the authorizations, the Court orders no further disclosure of this category of documents, for each reason cited by Defendants.[6]

/ / /

/ / /

---

[6] As to any of these documents which are already in Plaintiffs' possession: should Defendants later assert that Plaintiffs cannot use these documents in this litigation because of the manner in which Plaintiffs obtained them, the Court will consider this as grounds to reconsider this decision. *See also* the Court's concurrently-filed order reconsidering the *in camera* review of the personnel file of Leticia Castaneda.

**Request Set 4, #21**

**Summary of Request:**

All correspondence between County Counsel and defendants regarding Fox, Rogers, or CMR, from 12/2005 to 10/2011

**The Court's Prior Order:**

Defendant claims attorney-client and work-product protection. Plaintiffs claim waiver. Defendant shall determine whether any of the requested documents are now discoverable in light of the waiver by Defendant Tulare County described above. To the extent that Defendant believes that any of these documents are nevertheless protected in light of its other objections (compound / overbroad), Defendant shall submit these to the Court for *in camera* review.

**Order After *In Camera* Review:**

As a preface to their response, Defendants seek clarification as to the extent of the waivers. In light of the clarification provided above, it should be clear that none of the communications described by Defendants has lost its privileged status.

Defendants have provided two Pro-Law entries for the Court's review. Each represents a valid claim of privilege, and none is subject to the waivers described above. No disclosure is ordered.

**Request Set 4, #23-49**

**Summary of Request:**

"All documents" relating to specific phrases in the December 4, 2008 call

**The Court's Prior Order:**

Defendant shall determine whether any of the requested documents are now discoverable in light of the above-mentioned waivers of privilege by Defendant Tulare County. To the extent that Defendant believes that any of these documents are nevertheless protected in light of the other identified objections, Defendant shall submit these to the Court for *in camera* review.

The Court notes that the entry regarding these documents in Defendants' privilege log is vague. *See* Doc. 86-5 at p.4. Although Defendant asserts the attorney-client privilege, this entry does not mention this privilege. Furthermore, it identifies communications with attorney Seth Goldstein; the Court does not see why such communications would fit any of the privileges claimed. To the

9

1 extent that Defendant identifies responsive documents which it believes should not be produced,
2 Defendant must be more specific as to the objection claimed.

**Order After *In Camera* Review:**

Defendants have provided several Pro-Law entries and emails. Each represents a valid claim of privilege, and none is subject to the waivers described above. No disclosure is ordered.

**Request Set 4, #50**

**Summary of Request:**

"All documents" in possession of relevant county agencies regarding the "similarities between these requests [for records] and the repeated accusations in the family law matter," as stated in the 11/9/2009 memorandum of law by County Counsel Carol Helding, Bates #425.

**The Court's Prior Order:**

While the Court is mindful of Defendant's overbreadth argument, Defendant shall determine whether any of the requested documents are now discoverable in light of the above-mentioned waivers of privilege by Defendant Tulare County. To the extent that Defendant believes that any of these documents are nevertheless protected in light of the other identified objections, Defendant shall submit these to the Court for *in camera* review.

**Order After *In Camera* Review:**

For the same reasons as for Set 4, #23-49, no disclosure is ordered.

**Request Set 5, #8-12, 18, 20**

**Summary of Request:**

"All documents" containing facts forming the basis for specific affirmative defenses

**The Court's Prior Order:**

As the Court explained in its general discussion of waivers of privilege, Plaintiff has not offered a reason why Defendant should be deemed to have waived privileges as to "County Counsel files, ProLaw entries in County Counsel's information management system, [or] emails of Helding, Rozum and Langley." However, Defendant shall determine whether any of the requested documents are now discoverable in light of the above-mentioned waivers of privilege by Defendant Tulare County. To the extent that Defendant believes that any of these documents are nevertheless protected

in light of the other identified objections, Defendant shall submit these to the Court for *in camera* review.

**Order After *In Camera* Review:**

Defendants represent that none of the documents withheld due to a claim of privilege is subject to these waivers. No disclosure is ordered.

**Request Set 5, #22**

**Summary of Request:**

"All documents" created by any people in Defendant's Rule 26 Initial Disclosure Statement

**The Court's Prior Order:**

This request represents 58 people. Plaintiff in its response also acknowledges that the request was overbroad, and belatedly attempts to narrow the request to any such documents *concerning CMR and Ms. Fox*, created after December 2005. The Court is mindful of Defendant's objections, and finds the request overly broad and vague as framed. Nevertheless, the Court orders Defendant to serve upon the Court (and upon Plaintiff, if it has not already done so) a list of the names in the Rule 26 disclosure, as well as some information identifying who the people are (what role they play), which will allow the Court to determine whether any discovery should be ordered under this request.

**Order After *In Camera* Review:**

Defendants have produced their amended Rule 26 disclosures as an exhibit. No further disclosure is ordered.

/ / /

/ / /

**Request Set 5, #23**

**Summary of Request:**

Recordings, statements, or investigative reports written by any person [including investigators] and taken from any individuals in Defendant's Rule 26 Initial disclosure Statement and which concern this lawsuit.

**The Court's Prior Order:**

The Court is mindful of Defendant's objections, and finds the request overly broad and vague as framed. Nevertheless, the Court's order as to Set 5, #22 also applies here.

**Order After *In Camera* Review:**

Same as for Set 5, #22. No further disclosure is ordered.

**IT IS SO ORDERED**.

Dated:  9/23/2013                            /s/ SANDRA M. SNYDER
                                             UNITED STATES MAGISTRATE JUDGE