**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA FOX, ON BEHALF OF HERSELF AND AS NEXT FRIEND TO C.M.R., A MINOR,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF TULARE, LETICIA CASTANEDA, ERICA SOTO, RON CASTANEDA, JULIA LANGLEY, CAROL HELDING, JOHN ROZUM, STEVEN ROGERS and DOES 1-100,<br><br>Defendants. | Case No. 1:11-cv-00520-AWI-SMS<br><br>ORDER RE: IN CAMERA REVIEW<br><br>(Doc. 95) |

On July 24, 2013, the parties stipulated to *in camera* review of certain items from the personnel file of Clyde Tillery. Doc. 94, 95. The parties asked the Court to review these documents "to determine if the records are relevant on the issue of credibility and if the parties' interest in discovery of the records outweighs the interest in maintaining confidentiality." The documents relate to Tillery's termination from his job as a firefighter with the City of Porterville. Clearly the main document at issue is a March 2013 memo which explains the grounds for Tillery's termination (hereinafter "Statement of Decision").

On September 18, 2013, the Court requested, and the parties supplied, brief statements of their positions on this *in camera* review. Docs. 115, 117, 119, 120. The exhibits to these supplemental filings include excerpts from Tillery's 2013 deposition and a portion of the 2008 investigation into Steven Rogers by the Tulare County Sheriff's Department. The Court begins by summarizing these exhibits.

1

**SUMMARY OF EXHIBITS**

According to his deposition, Tillery attended school with Decedent Steven Rogers, father of the minor, CMR. Depo. at 12: 1-7. They were best friends. *Id.* at 12:17-19.

In the excerpts of the deposition provided by Plaintiffs, Tillery begins by describing an interaction with Defendant Steven Rogers. (Although Tillery does not recall the date, the interaction apparently relates to the child pornography investigation in 2008.) Rogers told Tillery "that C.M.R.'s mom [Ms. Fox] put some pictures of C.M.R. on the ... computer, and he wanted to find them." *Id.* at 24:2-5.

> He was trying to locate pictures of C.M.R. on the computer, and Steven really didn't know anything about a computer. I had to actually show him how to turn it on and get a search engine because he had no idea how to do anything on a computer. So I did turn it on for him. I came over one night and showed him, this is how you turn on a computer, this is how you get on a search engine, and you type in whatever you want to search and you hit, you know, hit the search button. ... [W]e started looking for karaoke songs on the internet briefly and then I left. At that point I had to go because he can sit there and talk about karaoke all night. So I showed him how to do it and then I left.

*Id.* at 23:13-21, 26:11-16. Tillery emphasized that Rogers never suggested that the photos he meant to search for would be of unclothed children, and that Tillery himself never suggested to Rogers that he do so. *Id.* at 26:3-15.

Plaintiffs' counsel then showed Tillery the statement he had given to Sherriff's Detective Lee as part of the investigation into Rogers's hard drive in 2008. Tillery declined to discuss some of his statements from 2008 because he did not remember them; otherwise, his 2008 statement was largely consistent with his 2013 deposition testimony.

Finally, Plaintiffs provide the Court with deposition excerpts relating to the circumstances surrounding Tillery's termination from the City of Porterville Fire Department in early 2013. (He indicated that he was still contesting these findings.) During this testimony, Tillery discussed this subject reluctantly, describing certain grounds for termination only when questioned directly. First he said he was fired for a "workman's comp issue." *Id.* at 38:9. On further questioning, he also acknowledged that he was fired for being "dishonest." *Id.* at 38:12. On further questioning, he explained that his dishonesty related to an investigation for "ma[king] fraudulent CPR cards to fire department staff." *Id.* at 39:6-7. On further questioning, he acknowledged that there had also been

2

one additional finding of dishonesty: he had been "dishonest to one of the police detectives about a computer. ... I stated that the computer would not play a CD, and the police officer said the computer was working fine." *Id.* at 40:6-16. On further questioning, he indicated that after he found that the computer could not play the CDs, he took the CDs home to play them. He found that they contained child pornography belonging to a colleague. Before he could disclose this information to a supervisor—four days after he had taken the CDs home—the supervisor approached him and asked him about the CDs. These CDs belonged to a fire department chief. At the time of his deposition, this chief was no longer with the fire department; Tillery did not know the exact reason for his separation, but suggested first that "they said he retired" and then that it was "over complaints of sexual harassment. But then again, that's just what I hear in the department." *Id.* at 41:5-19.

## DISCOVERY STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter . . . . The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

In a federal question case, privileges asserted in response to discovery requests are determined under federal law, not the law of the forum state. Fed. R. Evid. 501; *United States v. Zolin*, 491 U.S. 554, 562 (1989); *Kerr v. United States District Court for the Northern District of California*, 511 F.2d 192, 197 (9th Cir. 1975). Here, the City of Porterville has asserted the official information privilege. Federal common law recognizes a qualified privilege for official information, also known as the governmental privilege, or state secret privilege. *Id*. at 198. The application of the official information privilege is "contingent upon the competing interests of the requesting litigant and subject to disclosure especially where protective measures are taken." *Id.*

## DISCUSSION

Plaintiffs purport to offer a single reason why Tillery's personnel file is relevant: they simply want to "confirm" that Tillery was terminated for the reasons that he says he was

3

terminated. Doc. 117 at 1.[1] But Plaintiffs' filing does not focus on this single argument. Plaintiffs proceed to imply that they have a second reason, one which bears some relation to Tillery's 2008 statements to Detective Lee.

Plaintiffs' exact purpose here is unclear. They do not directly state their purpose, but instead provide a listing of facts. On the one hand, they assert: "Evidence will be presented at trial from a different source that Rogers said that it was Tillery who gave him the specific search terms to use to find child pornography." This statement implies that the March 2013 Statement of Decision will be used to impeach Tillery's 2008 statements. If so, the intended manner of impeachment is unclear. If the goal is to look for some substantive connection between two instances involving child pornography, no such connection is plausibly supported here, and for that reason disclosure is denied.

On the other hand, Plaintiffs may have the opposite purpose. They go on to state that "the sheriff's report reflects that Tillery told Rogers to search for 'preteen modeling' and 'preteen dating' sights [sic]."[2] As it happens, the Sheriff's report reflects no such thing.[3] Since this is a nonexistent statement, the Court cannot be sure whether Plaintiffs attribute it to Tillery or to some other source. If to Tillery, then Plaintiffs' purpose is not impeachment at all, but (again) to use the contents of the March 2013 Statement of Decision as substantive evidence in support of this connection. Once again, the Court explains that no such connection is plausibly supported here.

In any event, whether the goal is to impeach Tillery's 2013 deposition testimony, to impeach his 2008 account of the assistance he gave to Rogers, or to bolster that account, the result is the same. As the Tulare County Defendants note, "What is relevant to this lawsuit is what information may have been provided to Detective Lee by witnesses in connection with his

---

[1] More specifically, Plaintiffs state that they wish to "confirm he was found to have to have been dishonest about the reason for his having possessed child pornography." This misstates Tillery's testimony, which was that he had been found to have been dishonest about the capabilities of his office computer.

[2] In their supplementary filing, Plaintiffs explains that evidence will be presented at trial that these terms are code words for child pornography on the internet. Doc. 117 at 2.

[3] The closest statement is not by Tillery, but by Rogers, and it makes no reference to Tillery: he stated that "he was told to go check preteen modeling sites, at which point he has been conducting his own investigations by checking preteen sites." Plaintiffs also cite a statement by the sheriff's investigator that "Tillery told Defendant Rogers how to find images of children on the internet," but this statement is either a further misstatement of the report or represents other evidence that is not before this court.

investigation of possible pornography found on Steven Rogers' computer. *The veracity of Clyde Tillery is not at issue*." Doc. 119 at 2 (emphasis added). In considering the relationship between the March 2013 Statement of Decision and this case, the Court agrees. The documents in question are not "relevant to the claim or defense of any party" (Rule 26(b)(1)) in a manner sufficient to defeat the City of Porterville's official information privilege over these documents.

## CONCLUSION

The Court ORDERS no disclosure from the *in camera* review. Defendants shall communicate with the Court and with nonparty City of Porterville to arrange for retrieval of the documents.

IT IS SO ORDERED.

Dated:   **October 16, 2013**          **/s/ Sandra M. Snyder**
                                       UNITED STATES MAGISTRATE JUDGE