**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA FOX, ON BEHALF OF HERSELF AND AS NEXT FRIEND TO C.M.R., A MINOR,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF TULARE, LETICIA CASTANEDA, ERICA SOTO, RON CASTANEDA, JULIA LANGLEY, CAROL HELDING, JOHN ROZUM, STEVEN ROGERS and DOES 1-100,<br><br>Defendants. | Case No. 1:11-cv-00520-AWI-SMS<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT<br><br>(Docs. 160, 182, 189) |

Before the Court is Plaintiffs' motion for default judgment against Defendant Steven Rogers. The motion is considered by Magistrate Judge Sandra M. Snyder pursuant to 28 U.S.C. § 636(b)(1)(A) and LR 302 (c)(19). For the reasons below, the motion is DENIED.

**PROCEDURAL BACKGROUND**

On January 21, 2014, Plaintiffs filed a motion seeking default judgment against Defendant Steven Rogers under the First Amended Complaint. Doc. 160. The basis for this motion is that on July 13, 2011, a clerk's entry of default as to Rogers had been entered as to the original Complaint. Doc. 21. Plaintiffs' motion also includes a request for damages, as itemized in a supporting affidavit. Doc. 160-3. On January 30, 2014, Plaintiffs amended this affidavit, revising the amount of compensatory damages and attaching evidence of these expenses. Doc. 182.

1

On February 5, 2014, the other defendants opposed Plaintiffs' motion for default judgment against Rogers. Docs. 183, 184. The Court granted Plaintiffs an extension of time within which to reply, through February 21, 2014, and took the matter under submission, deeming it suitable for decision without oral argument. Doc. 187. Plaintiffs replied on that date. Docs. 190, 191.

In their replies, Plaintiffs concede several points: that any judgment against Rogers must be under the original Complaint; that Plaintiffs are not entitled to punitive damages against Rogers's estate; and that judgment as to most of the claims against Rogers was untimely, given that the District Court was concurrently considering Motions for Summary Judgment in favor of the other Defendants. Nevertheless, Plaintiffs adamantly insist that judgment should be entered against Rogers personally. Only "in the alternative" and as an afterthought do Plaintiffs request appointment of a personal representative for Rogers, and only "with a directive that the personal representative's role is only to allow Plaintiffs' the right to file a claim in Rogers' insolvent estate." Doc. 191 at 7 [sic].

Along with their replies, Plaintiffs filed a further amendment to their motion, showing that they in fact wish to proceed against Rogers under the original Complaint, not the FAC. Doc. 189. On February 25, 2014, the County Defendants requested that the Court disregard this amendment, since it was made after the matter had been taken under submission, leaving them unable to address it. Doc. 192.

The Court shares Defendants' concern. Plaintiffs' sudden shift in argument amounts to an admission that its original motion was improper. Nevertheless, the Court believes it can consider Plaintiff's new argument without undue prejudice to Defendants. Even with this amendment, the motion still lacks merit. And even if it had merit, the Court would have granted relief so as to not prejudice Defendants, considering only those claims that did not interfere with the ongoing Motions for Summary Judgment. Therefore, because prejudice to Defendants would be moderated under either outcome, the Court considers the amended motion here.

## PLAINTIFFS MAY PROCEED ON ORIGINAL COMPLAINT

Defendant Steven Rogers was served with the original complaint on May 17, 2011. On July 8, 2011, Plaintiffs requested entry of default as to this Defendant only. Doc. 17. On July 13, 2011,

2

this was granted. Doc. 21. Rogers died on October 22, 2011. On November 15, 2011, Plaintiffs filed an FAC which acknowledged Rogers's death. Doc 46. Nevertheless, Plaintiffs did not seek to substitute and serve a representative for Rogers.

"In general," a pleading such as a first amended complaint must be served upon "every party." FRCP 5(a)(1)(B). No service is required "on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." FRCP 5(a)(2).

Along with their reply brief, Plaintiffs filed a further amendment to their motion for default judgment, purporting to show that the legal and factual claims against Rogers in the complaint and in the FAC were materially identical. Doc. 189. However, the claim for Conspiracy to Interfere with Civil Rights under 42 U.S.C. § 1985(3) bears further scrutiny. The District Court had dismissed the § 1985 claim from the original complaint, observing:

> For the first time in the opposition, Plaintiffs state that their conspiracy claim under 42 U.S.C. § 1985(3) claim is based on gender discrimination against Fox. Opposition at 24-32, Doc. 28 at 24-32. Plaintiffs have not set forth any allegations in the Complaint that raise an inference of gender discrimination. At the hearing, Plaintiffs requested that they be granted leave to amend this claim. Accordingly, Social Worker Defendants and Ron Castaneda's motion to dismiss Plaintiffs' third claim for relief is GRANTED. ... This Court's order with respect to this claim applies to all Defendants that Plaintiffs brought this claim against.

Order on Motion to Dismiss (Doc. 45) at 11.

To cure this shortcoming, the FAC added the following regarding that claim:

> Under color of law and based on FOX's gender, Defendants ROGERS, Ron and Leticia CASTANEDA, Erica SOTO, Julia LANGLEY, and Carol HELDING failed to act on false allegations made by Defendant ROGERS, a male, while at the same time, discounted, ignored and moved to deprive Plaintiff FOX, a female, of custody when C.M.R. and FOX made valid reports of child abuse.

FAC at ¶216

Furthermore, specific allegations regarding Rogers differ between the complaint and the FAC. For example, compare Complaint at ¶¶36-39 with FAC at ¶¶73-77 (adding, for the first time, certain elements of conspiracy); Complaint at ¶41 with FAC at ¶¶81-85 (same); Complaint at ¶42 with FAC at ¶89 (adding that Rogers's allegation that CMR was raped lacked medical evidence); Complaint at ¶45 with FAC at ¶¶92-93, 95 (adding opinion of CWS critical of Rogers taking CMR for invasive evaluations); Complaint at ¶55 with FAC at ¶106-107 (alleging that no charges were

3

filed against Rogers because of the relationship between Castaneda and Rogers, and that they agreed to misdirect social workers and sheriff's investigators); Complaint at ¶70 with FAC at ¶120 (alleging confidentiality of a report to show that Rogers violated confidentiality rules).

Although these new factual and legal allegations appear to invoke the terms of FRCP 5(a)(2), the Court concludes that they do not prevent Plaintiffs from proceeding against Rogers on the original Complaint, to which he defaulted. *See W. Sur. Co. v. Leo Const., LLC*, 2013 WL 144097 (D. Conn. Jan. 11, 2013) ("there is nothing improper about holding one defendant in default of one complaint and other defendants liable on later complaints"). The consequence for failure to comply with FRCP 5(a)(2) appears to be that default may still be pursued under the original complaint. *See, e.g., IBEW Local 595 Health & Welfare Trust Fund v. Givens Elec., Inc.,* C 09-06076 RS, 2011 WL 2414346 (N.D. Cal. June 15, 2011).

## FAILURE TO STATE A CLAIM

Before considering the issue of substitution, the Court notes as a preliminary matter that four of the claims against Rogers must be dismissed on their face. In considering a motion for default judgment, the Court must consider whether the plaintiff "state[s] a claim on which the [plaintiff] may recover." *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (citing *Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir.1978)).

Third Claim: Conspiracy to Interfere with Civil Rights

As mentioned above, the § 1985 claim in the original Complaint was dismissed against all parties, including Rogers. Plaintiffs have not served Rogers's representative with the amended FAC, so the claim remains dismissed.

Seventh Claim: General Negligence

The seventh claim in the original complaint is for "General Negligence." Doc. 1 at 30. The elements of negligence are that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury. *Nally v. Grace Community Church*, 47 Cal.3d 278, 292 (1988). The FAC identifies the duty of care in this case as "statutory and common law duties to properly effectuate the child protection laws of the State of California and not to interfere with the civil rights of plaintiffs." FAC ¶252.

4

The FAC thus identifies two separate duties: First, Rogers owed a duty to not interfere with Plaintiffs' "civil rights." And second, Rogers owed "statutory and common law duties to properly effectuate the child protection laws of the State of California." Rogers is a private person. Plaintiffs have identified no legal grounds why the above-mentioned duties would apply to him. The Court infers that Plaintiffs intended to include only County employees in this claim. Plaintiffs have failed to state a negligence claim as to Rogers.

Eleventh Claim: Civil Conspiracy

The eleventh claim in the original complaint is for "civil conspiracy."

Conspiracy alone is not a cause of action but a legal doctrine for imposing liability. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-511 (1994). The elements of civil conspiracy are: 1) formation and operation of the conspiracy; and, 2) damage resulting to plaintiff from a wrongful act done in furtherance of a common design. *Rusheen v. Cohen*, 37 Cal.4th 1048, 1062 (2006). "[T]he major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." *Doctors' Co. v. Superior Court*, 49 Cal. 3d 39, 44, 775 P.2d 508, 510-11 (1989).

This cause of action alleges: "In doing the acts describe [sic] herein, [Defendants Tulare County, Leticia Castaneda, Erica Soto, Ron Castaneda, and Steven Rogers]" acted in concert, consulting and conferring with one-another, jointly engaging in said acts, thereby conspiring to commit the civil wrongs alleged herein." Complaint at ¶198. The "civil wrongs alleged herein" are not identified.

As noted above, Plaintiffs amended the FAC to identify an agreement between Rogers and Castaneda. However, for purposes of this motion the operative pleading is the original complaint. The Complaint alleges no agreement made between Rogers and anybody. *See, e.g.,* ¶¶35-40.

Twelfth Claim: Negligence Per Se

The twelfth claim in the original complaint is for "negligence per se" against Rogers. Doc. 1 at 34. "Negligence per se" is an evidentiary doctrine codified at California Evidence Code section 669. Subdivision (a) creates a presumption of negligence if four elements are established: (1) the

5

defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted. The presumption may be rebutted. *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285 (2006).

A finding that negligence per se applies does not state an independent cause of action. Instead, it operates to establish a presumption of negligence in service of a preexisting common law cause of action. *Id*. This cause of action simply alleges that Rogers violated various Penal Code provisions by committing sexual battery, taking naked photos of C.M.R., and possessing child pornography—all intentional acts. Plaintiffs have failed to state a claim for negligence.

## INAPPLICABILITY OF 90-DAY PERIOD UNDER FRCP 25

Although Plaintiffs alleged in the FAC that Rogers was killed in a motor vehicle accident, Plaintiffs did not substitute a personal representative or the estate of Steven Rogers as a defendant, and the FAC was never served on any representative of Steven Rogers. Defendants argue that Plaintiffs' claims against Rogers "must be dismissed" pursuant to FRCP 25(a), which states as follows:

> (1) *Substitution if the Claim Is Not Extinguished*. If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.
> ...
> (3) *Service*. A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. A statement noting death must be served in the same manner. Service may be made in any judicial district.

"Although Rule 25(a)(1) could be clearer, a careful reading of the rule coupled with an understanding of its function leads to the conclusion that the rule requires two affirmative steps in order to trigger the running of the 90 day period. First, a party must formally suggest the death of the party upon the record. Second, the suggesting party must serve other parties and nonparty successors or representatives of the deceased with a suggestion of death in the same manner as

required for service of the motion to substitute." *Barlow v. Ground*, 39 F.3d 231, 233-34 (9th Cir. 1994) (citations omitted).

These requirements for mandatory dismissal do not apply here. This can be shown with reference to the requirement of "service of a statement noting the death." The Ninth Circuit requires that "a formal suggestion of death is made on the record, regardless of whether the parties have knowledge of a party's death." *Braden v. Plumbing & Pipefitting Indus. Local 38 Convalescent Trust Fund*, 967 F.2d 584 (9th Cir. 1992). In *Braden*, the Ninth Circuit "adopt[ed]" this rule from the Tenth Circuit decision in *Grandbouche v. Lovell,* 913 F.2d 835 (10th Cir.1990) (per curiam), in which the Court explained:

> Mere reference to a party's death in court proceedings or pleadings is not sufficient to trigger the limitations period for filing a motion for substitution. *See, e.g., Kaldawy v. Gold Serv. Movers, Inc.,* 129 F.R.D. 475, 477 (S.D.N.Y.1990) (court's order noting plaintiff's death and placing case on suspended calendar, which was mailed to counsel for all parties, including decedent's counsel, insufficient to trigger the ninety-day limitations period); *Tolliver v. Leach,* 126 F.R.D. 529, 530-31 (W.D.Mich.1989) (defense counsel's statement concerning defendant's death, made on record during discovery conference, insufficient to trigger limitations period); *Gronowicz v. Leonard,* 109 F.R.D. 624, 626-27 (S.D.N.Y.1986) (letter from party's attorney to court notifying court of party's death insufficient suggestion of death to trigger limitations period).

*Grandbouche,* 913 F.2d at 836; *cf. Miles, Inc. v. Scripps Clinic & Research Found.,* 810 F. Supp. 1091, 1102 (S.D. Cal. 1993) (ninety-day period triggered by pretrial memorandum that set forth an intention to substitute the wife of the decedent as the executrix of the estate for plaintiff). Thus, although Plaintiffs clearly were aware of Rogers's death and indicated as much upon the record, their filing was of insufficient formality to initiate the 90-day period.

This outcome may seem incongruous in a situation where, as here, Plaintiffs have made no effort to substitute a party despite admitting knowledge of Rogers's death for more than two years. But given that Rule 25 creates a harsh 90-day condition under which claims "must" be dismissed, it makes sense to apply the same strict definition of "suggestion of death" in all circumstances, if only for the purpose of giving clear notice to Plaintiffs of when the time window has begun. As the Advisory Committee Note indicates, Defendants could have availed themselves of this same mechanism by filing the suggestion of death themselves. ("If a party or the representative of the deceased party desires to limit the time within which another may make the motion, he may do so by suggesting the death upon the record.")

This does not prevent the Court from considering Plaintiffs' extreme delay in exercising its discretion whether to grant a motion to substitute, an inquiry which the Court makes next.

## SUBSTITUTION FOR ROGERS IS IMPROPER

Plaintiffs' two remaining claims against Rogers (for Intentional Infliction of Emotional Distress and for Sexual Battery) are under California law. While Rule 25 provides the procedure for substitution of a "proper party," "[t]he question of who is a proper party is a substantive issue, for which we must rely upon state law." *In re Baycol Products Litig.,* 616 F.3d 778, 787-88 (8th Cir. 2010). Sections 377.40-41 of the California Code of Civil Procedure indicate that the proper party is the decedent's personal representative[1] or, to the extent provided by statute, the decedent's successor in interest,[2] subject to exceptions governing creditor claims. "[T]rial cannot proceed and judgment cannot be given for or against the decedent, nor for or against the decedent's personal representative until the latter has been made a party by substitution." *Johnson v. Simonelli*, 231 Cal.App.3d 105, 107 n.1 (3d Dist.1991); *Estate of Edwards*, 82 Cal.App.3d 885, 893, 147 Cal.Rptr. 458, 463 (3d Dist.1978) (if personal representative is not substituted any judgment purporting to be in favor of decedent is void).

Plaintiffs spend the lion's share of their reply briefs arguing against substitution. *See* Plaintiff's Reply to Objections by Castaneda *et al*., Doc. 190:

> There was no need to substitute a personal representative for the estate of Steven Rogers as a defendant because his default had been entered and the First Amended Complaint did not affect any of the claims made against him. ... In this case, there is no personal representative and the decedent, Rogers' successor in interest is the minor Plaintiff and his other minor child who is not a party to this action. It would be a conflict of interest for either plaintiff to seek appointment as personal representative of Rogers' estate because their respective interest would be in conflict ... Plaintiff, a minor, does not have the capacity to file a probate proceeding and clearly, codefendants are not going to file for appointment as the personal representative of Roger's estate because it would obligate them to defend against the minor Plaintiff's claims.

---

[1] "Personal representative" means executor, administrator, administrator with the will annexed, special administrator, successor personal representative, public administrator acting pursuant to Section 7660, or a person who performs substantially the same function under the law of another jurisdiction governing the person's status. Cal. Prob. Code § 58 (West). *See* California Code of Civil Procedure Section 336.2 and Probate Code section 9370 (requirements for action against personal representative).

[2] "Successor in interest" means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action. Cal. Civ. Proc. Code § 377.11 (West).

1  Plaintiffs further note (as an argument against substituting a party for Rogers) that to their
2  knowledge, Rogers was insolvent when he died. This is consistent with the fact that Plaintiffs have
3  waited two-and-half years before seeking this default judgment.

4  Nevertheless, Plaintiffs acknowledge (perhaps unintentionally) that some substitution is
5  necessary when they admit that they do not seek punitive damages, citing California Code of Civil
6  Procedure Section 377.42, which forbids such a reward in actions against a decedent's personal
7  representative or successor in interest. Entirely as an afterthought, they then request that the Court,
8  "[i]n the alternative, permit Plaintiffs seek appointment of a personal representative for Rogers'
9  with a directive that the personal representative's role is only to allow Plaintiffs' the right to file a
10 claim Rogers' insolvent estate." Doc. 191 at 7 [sic]. Despite claiming detailed knowledge of
11 Rogers's property and heirs, they make no effort to identify who this person should be.

12 FRCP 25 states that: "If a party dies and the claim is not extinguished, the court may order
13 substitution of the proper party." As the Advisory Committee Note to the 1963 Amendment
14 observes, this language is discretionary. "A motion to substitute made within the prescribed time
15 [i.e., 90 days] will ordinarily be granted," but it "may be denied by the court in the exercise of a
16 sound discretion if made long after the death—as can occur if the suggestion of death is not made
17 or is delayed—and circumstances have arisen rendering it unfair to allow substitution. ...
18 Accordingly, a party interested in securing substitution under the amended rule should not assume
19 that he can rest indefinitely awaiting the suggestion of death before he makes his motion to
20 substitute."

21 Plaintiffs' request is confounding. If, as Goldstein declares, Rogers's estate in fact was
22 insolvent, the need for this long-delayed default judgment is dubious. But even that declaration of
23 insolvency is uncertain. Conspicuously, it is made without attribution to personal knowledge ("it
24 was confirmed that there was no Will, no probate action and that Defendant Rogers died intestate."
25 Doc. 191-1).

26 If Rogers did not die insolvent, his heirs may in fact have a material interest to defend. As
27 Plaintiffs acknowledge, these include two likely heirs whose interests "would be in conflict":
28 Plaintiff C.M.R. herself, and Rogers's other daughter who is not a party to this action. Yet,

9

Plaintiffs cite this fact of conflict as the very reason why they declined to give that other daughter an opportunity to substitute. Instead, and without citing any legal authority, Plaintiffs insist that any personal representative must be a sinecure, operating under a limited "directive" to allow Plaintiffs to pursue their claim against Rogers's "insolvent estate."

The Court cannot grant this motion. The appointment of a purely *pro forma* personal representative, as Plaintiffs request, would not be consistent with the potential rights of these successors. "Because the purpose of Rule 25(a)(1) is to protect the estate of the decedent, district courts must ensure only those individuals who can adequately represent the interests of the deceased party are substituted under the Rule." *In re Baycol Products Litig.*, 616 F.3d at 788 (quotation omitted).

Furthermore, Plaintiffs have delayed two-and-a-half years in seeking substitution for Rogers. This delay is entirely without justification. To the extent that Rogers had any assets worth pursuing—that is, to the extent that this motion was not entirely futile—this delay worked prejudice upon Rogers's heirs. *Cf. Ashley v. Illinois Cent. Gulf R. Co.,* 98 F.R.D. 722, 724 (S.D. Miss. 1983) (dismissal under Rule 25 supported "in view of the lack of diligence of Plaintiff's counsel throughout these pleadings"—including delay totaling eight months before and after filing of Suggestion of Death). Plaintiffs' request "in the alternative" for substitution is denied.

## CONCLUSION

Because, as stated above, California law does not permit judgment against a deceased defendant as to Plaintiffs' two remaining claims, the motion for default judgment (Docs. 160, 182, 189) against Rogers is DENIED.

IT IS SO ORDERED.

Dated:   **March 5, 2014**                    **/s/ Sandra M. Snyder**
                                             UNITED STATES MAGISTRATE JUDGE