1

2

3        **IN THE UNITED STATES DISTRICT COURT**

4        **FOR THE EASTERN DISTRICT OF CALIFORNIA**

5

| | |
|---|---|
| 6   **PAMELA J. FOX, ON BEHALF OF HERSELF AND AS NEXT FRIEND TO C.M.R., A MINOR,** | **1:11-cv-O520  AWI SMS** |
| 8   **Plaintiffs,** | **ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION** |
| 9   **vs.** | |
| 10  **COUNTY OF TULARE, LETICIA CASTANEDA, ERICA SOTO, RON CASTANEDA, JULIA LANGLEY, CAROL HELDING, JOHN ROZUM, STEVEN D. RODGERS and DOES 1-100,** | **Doc. # 162** |
| 14  **Defendants.** | |

16

17        This is an action for damages by plaintiff Pamela J. Fox on behalf of herself and as next

18   friend to her daughter, C.M.R. (collectively, "Plaintiffs").  For purposes of analysis of the

19   pending motions for summary judgment, there are two groups of defendants.  The first group

20   consists of County of Tulare ("County") and the "Attorney Defendants," Julia Langley

21   ("Langley"), Carol Helding ("Helding"), and John Rozum ("Rozum").  The second group

22   consists of social workers Leticia Castaneda ("Leticia"), Erica Soto ("Soto") and Tulare County

23   Police Officer Ron Castaneda ("Ron") [1] (the "Social Work Defendants").  Both groups have filed

24   motions for summary judgment or summary adjudication.  Defendant Steven Rogers ("Rogers")

25   is deceased and is not represented in the current motions.  Plaintiffs' First Amended Complaint

26

27   _____

28   [1]   The court uses the first names of Leticia Castaneda and Ron Castaneda to avoid confusion in the
     discussion that follows.  No disrespect is intended.

("FAC") alleges three claims pursuant to 42 U.S.C. § 1983 and one claim pursuant to 42 U.S.C. § 1985. In addition, Plaintiffs' FAC alleges six claims pursuant to California statutory and common law. Federal subject matter exists over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331; supplemental jurisdiction over Plaintiffs' state law claims exists pursuant to 28 U.S.C. § 1367. Venue is proper in this court.

## BACKGROUND FACTS AND CLAIMS ALLEGED

C.M.R. was born in 2005 to the union of Fox and Rogers. Fox and Rogers were never married. Fox and Rogers separated soon after C.M.R.'s birth and commenced a long and bitterly fought custody battle. Conditions of parental custody over C.M.R. shifted between Rodgers and Fox over time as claims and counterclaims of sexual molestation, abuse and endangerment were exchanged. The central allegation that underpins the instant action is that on July 23, 2008, law enforcement personnel investigated Fox's report of Rodger's molestation of C.M.R. Pursuant to that investigation, detectives seized the hard drive from Rodger's computer. Fox was informed that over one hundred images classifiable as child pornography were recovered from Rodger's hard drive. Criminal charges stemming from the child pornography found on Rogers' computer were considered, but no charges were ultimately filed. Fox and Rodgers continued to trade allegations of endangerment, molestation or abuse of C.M.R. During Fox's efforts to gain custody of C.M.R. and deny same to Rodger's, Fox alleges that she was subjected to a concerted and conspiratorial effort by the Attorney Defendants to cover up the extent to which C.M.R. was being endangered by being in Rodgers' custody by preventing Fox's access to the images stored on Rogers' computer for presentation in Family Court. Fox also alleges a conspiracy by the Social Work Defendants to cast Fox in the role of an individual who fabricated reports of child molestation to further her own custody interests. Fox alleges that the Social Work Defendants breached required duties under California law and conspired against Fox, both on account of her gender and because of the friendship between Rodgers and Ron Castaneda, to keep the facts of Rodger's possession of child pornography from surfacing and to maintain Rogers custody of C.M.R.

Plaintiffs filed their initial complaint on March 24, 2011.  Plaintiffs' FAC was filed on November 11, 2011.  The principal difference between Plaintiffs' original Complaint and the FAC is that Plaintiffs' claim pursuant to 42 U.S.C. § 1985, which had been dismissed with leave to amend because it failed to allege that the alleged conspiracy was the result of unlawful discrimination, was re-alleged as being conspiracy resulting from discrimination on account of gender.  Plaintiffs' FAC alleges three claims pursuant to 42 U.S.C. § 1983.  The first claim for relief alleges "state created danger" against all Defendants except Rogers and County.  The gist of Plaintiffs' state created endangerment claim, as the court understands it, is that Defendants carried out various acts that mislead the court and resulted eventually in the placement of C.M.R. in Roger's custody where C.M.R. was in danger of sexual molestation and Plaintiffs' Fourteenth Amendment right to be free from interference with the parental-child relationship was violated.  Plaintiff's second claim for relief is alleged against Defendant County only, and alleges a policy and practice that ignores claims brought by parents "based on discrimination against protective parents who are automatically assumed to be making false allegations to gain advantage in the Family Court."  Doc. # 46 at 46:2-5.  Presumably, Plaintiffs are alleging that the policy and practice results in unreasonable interference with parent-child relationships in violation of the Fourteenth Amendment.

Plaintiff's third and fourth claims for relief allege conspiracy to interfere with a constitutional right.  Plaintiff's fourth claim for relief is alleged pursuant to 42 U.S.C. § 1983 against all Defendants except Rogers and County.  The conspiracy is alleged by Plaintiffs to have begun with an agreement between Rogers and Ron to illegally access a state database to gather information on the criminal record of Fox's then-cohabiting boyfriend, a man named Edward Skelton.  Rogers allegedly then conspired with Leticia and Soto to "derail the investigation conducted by the sheriff's department [concerning Fox's report of Rogers' sexual abuse of C.M.R.], and conceal the fact that child pornography was found on Rogers' computer."  Doc. # 46 at 54:19-21.  The claim further alleges that Rogers, Leticia and Soto agreed to suppress reports made by Fox accusing Rogers of child abuse and accused Fox of making false

reports of abuse.  Plaintiffs' fourth claim alleges that Langley, Helding and Rozum joined the conspiracy "by agreeing to prevent access to [Child Welfare Services ("CWS")] records, thereby concealing the wrongfulness of Rogers' conduct and to permit Rogers to continue to seek and obtain full custody of C.M.R. in violation of Plaintiffs' liberty and due process rights as described herein."  Doc. # 46 at 55:6-12.  Plaintiffs' third claim for relief alleges the same chain of alleged conspiratorial events but alleges that the Defendant's acts were "additionally motivated by gender class-based, invidiously discriminatory animus."  Doc. # 46 at 49:24-25.

Plaintiffs' fifth through tenth claims for relief are alleged pursuant to California statutory or common law.  In order, the claims are: negligent retention and supervision against County, Leticia and Rozum, intentional infliction of emotional distress against all Defendants except Langley and Helding, general negligence against all Defendants except Langley and Helding, sexual battery against Rogers, civil conspiracy to intentionally inflict emotional distress, conceal evidence and deprive plaintiffs of liberty rights granted by the California State Constitution against all Defendants except Langley, Helding and Rozum, and negligence per se against Rogers.

## PARTIES PROFFERS OF DISPUTED AND UNDISPUTED MATERIAL FACTS

The parties have proffered an unusually large number of both disputed and undisputed material facts.  As will be apparent from the discussion that follows, the court's decision in this case is based on a relatively small number of facts. The central fact of this case that underpins the court's decision is the fact that, over time, the Family Court of Tulare County made adjustments to orders for physical custody of C.M.R. based on information that became available to it.  This fact is undisputed.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710

(9th Cir. 1985); <u>Loehr v. Ventura County Community College Dist.</u>, 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial."  <u>Cecala v. Newman</u>, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007).  A party that does not have the ultimate burden of persuasion at trial – usually but not always the defendant – "has both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment."  <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  <u>Id.</u>

     If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968); <u>Ruffin v. County of Los Angeles</u>, 607 F.2d 1276, 1280 (9th Cir. 1979).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11; <u>First Nat'l Bank</u>, 391 U.S. at 289; <u>Strong v. France</u>, 474 F.2d 747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>Anderson</u>, 477 U.S. 248-49; <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>First Nat'l Bank</u>, 391 U.S. at 290; <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); <u>International Union of Bricklayers v. Martin Jaska, Inc.</u>, 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); <u>Poller</u>, 368 U.S. at 468; <u>SEC v. Seaboard Corp.</u>, 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)(per curiam); <u>Abramson v. University of Hawaii</u>, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

## DISCUSSION

### I. Federal Claims – General Considerations

(1) Defendants acted under color of state law [and (2) that Defendants' actions] deprived

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs of rights secured by the Constitution or federal statutes." Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988).  There is no dispute that Defendants were acting under color of California state law at all times pertinent to this action.  What is less clear is whether any of the harms alleged by Plaintiffs, even if adequately supported by factual allegations, would give rise to a violation of a right under the Constitution or federal law.

### A. *State Created Danger*

Plaintiff's first claim for relief is against all Defendants except for Rogers and County for violation of C.M.R.'s Fourteenth Amendment substantive due process right against violation of bodily integrity under the theory of state created danger in violation of 42 U.S.C. § 1983.   The general rule is that government actors are not liable for injury to an individual arising from the actions of a non-state actor where the injury is due to failure to provide governmental aid, even when such aid is necessary to secure life, liberty or property interests guaranteed by the Fourteenth Amendment. See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 196 (1989).  The exception to this general rule that Plaintiffs rely upon is the "state created danger" exception.  To impose liability against a governmental actor for injury or risk caused by a third party under this exception a plaintiff must show (1) "affirmative conduct on the part of the state [actor] in placing the plaintiff in danger" and (2) "deliberate indifference by the state [actor] to a "known or obvious danger." Patel v. Kent Sch. Dist., 648 F.3d 965, 648 (9th Cir. 2006).

The first element – affirmative conduct placing plaintiff in danger – requires that the state actor placed the plaintiff in the path of a danger that would not have existed but for the state actor's conduct. See L.W. v. Grubbs, 974 F.2d 119, 121 (9th Cir. 1992 ) ("Grubbs I") (danger creation by state actor requires affirmative act); Kennedy v. City of Ridgefield, 439 F.3d 1055, 1062 (9th Cir. 2006) (court examines whether the state actor "left the person in a situation that was more dangerous than the one in which they found him").  The second element – deliberate indifference – is "a stringent standard of fault, requiring that a [government] actor disregarded a known or obvious consequence of his action." Bryan v. Brown, 520 U.S. 397, 410 (1997).  In

L.W. v. Grubbs, 92 F.3d 894 (9th Cir. 1996) (Grubbs II), the Ninth Circuit clarified the showing required to satisfy the element of "deliberate indifference."  Deliberate indifference is a standard requiring a showing of greater culpability than gross negligence in that it must be shown that "the defendant knows that something *is* going to happen but ignores the risk and exposes [the plaintiff] to it."  Id. at 900 (italics in original).  "Deliberate indifference to a known, or so obvious as to imply knowledge of, danger, by a [government actor] who created the danger is enough.  Less is not enough."  Id.

Plaintiffs' FAC alleges different actions by Different groups of Defendants placed C.M.R. in danger of being molested by Rogers.  With regard to the Attorney Defendants -- Langley Helding and Rozum -- Plaintiffs allege that the attorney Defendants' opposition to the disclosure of information in possession of the Tulare County Sheriff's Department ("TCSD"), including the contents of Rogers' computer allegedly containing pictures qualifying as child pornography, resulted in C.M.R. remaining in Rogers' custody and being denied protection by Plaintiff for a longer period of time than would have been the case if the Attorney Defendants had not opposed the disclosure.   With regard to the Sheriff's Department and Child Welfare Services Defendants – Leticia, Soto and Ron – the FAC alleges violation of standards of care in carrying out the investigative process, erroneous determinations of lack of risk from Rogers, erroneous determinations of false reporting by Fox and a conscientious effort by all the Defendants to deprive Fox of custody over C.M.R.

First, as the Attorney Defendants point out, there is no affirmative act by any Defendants that placed C.M.G. in danger in the first instance.  The record is clear that Fox and Rogers separated and went before a Family Law judge to establish custody and contested the custody decision prior to the involvement of CWS, the Sheriff's Department or the Attorney Defendants.  To the extent that C.M.R. was in danger of sexual molestation as a result of being in the physical custody of Rogers, that danger pre-existed any actions by any of the Defendants and nothing the Defendants did had increased or decreased whatever danger previously existed.  Plaintiffs contend that the opposition of the Attorney Defendants to Plaintiffs' efforts to obtain release of

all of the requested information of the Sheriff's Department investigation of the investigation of Rogers and the failure of the CWS Defendants to adequately investigate and properly report findings resulted in an extension of the time that C.M.R. was left in Rogers' physical custody and therefore exposed C.M.R. to risk of sexual molestation that she would not have existed had the evidence been promptly made available.

However, substantive due process does not require that a state actor extricate someone from a situation that pre-existed the state actors' involvement. See Jackson v. Byrne, 738 F.2d 1443, 1446 (7th Cir. 1984) (no Fourteenth Amendment liability against firefighters for inadequate response during strike); Jackson v. City of Joliet, 715 F.2d 1200, 1204 (7th Cir. 1983) (no Fourteenth Amendment liability against police officers for failing to aide persons discovered in burning car); Johnson v. City of Oakland, 1997 WL 776368 (N.D. Cal. 1997) at *6 (no Fourteenth Amendment liability against police who gave chase to stolen van with plaintiff hanging on the roof). To the extent any of the Defendants acts may have caused a delay in the placement of C.M.R. in Plaintiff's physical custody, that delay did not result in any danger to C.M.R. that did not previously exist. Defendants cannot therefore be held liable because they are not responsible for the creation of danger to C.M.R.

Second, Plaintiffs' effort to impose liability under a theory of state created danger fails because there is absolutely no evidence to support a finding of deliberate indifference to any danger that C.M.R. might have faced by any Defendant. The history of proceedings in the family and juvenile courts in the underlying custody battle between the parties is a history of more-or-less continuous marshaling county judicial and agency resources to assess and reassess the relative risks of one or the other parent's custody, and the crafting and re-crafting of custody and visitation rights for C.M.R.'s protection and benefit. It is not inconsequential that both C.M.R.'s parents were found to have presented their own set of risks to C.M.R.'s safety and welfare at one time or another during the on-going custody dispute. Fox has alleged that the attorney Defendants had a thorough understanding of both the history of the custody dispute and the fruits of the sheriff's department's investigation and understood the relevance of the

investigation material to Plaintiff's custody dispute.  Even taking that allegation, which is disputed by Defendants, as completely true, it remains the case that the Attorney Defendants were called upon to balance the risks to interests of their clients – the County and its agencies – resulting from improper disclosure of investigation information against the known and already existing risks to C.M.R. from both of her parents.  Similarly, there is no evidentiary basis to suggest that the CWS Defendants were at all unmindful of the risks to all parties or that they disregarded risk to C.M.R. given their extensive involvement in the dispute and their contacts with Fox, Rogers, and C.M.R.  The fact that the CWS Defendants may not have assessed the relative risk of custody by Fox or Rogers in a way that favored Fox does not mean that the Defendants were unmindful or uncaring of the risks that C.M.R. faced.  The record before the court is completely unsupportive of any claim of deliberate indifference.

The court concludes that Plaintiffs have failed to establish the existence of material fact showing that the Defendants either affirmatively placed C.M.R. in a position of danger or that they did so with deliberate indifference.  Defendants are therefore entitled to summary judgment as to Plaintiffs' claim for state created danger.

### B.  Physical Custody Allocation Does Not Implicate the Constitution

Claims two, three and four allege claims based on violation of the Due Process Clause of the Fourteenth Amendment.  Substantive due process analysis "must begin with a careful description of the asserted right[,] for the more general is the right's description, *i.e.* the free movement of people, the easier is the extension of substantive due process."  Hutchins v. Dist. Of Columbia,  188 F.3d 531, 538 (D.C. Cir. 1999) (citing Reno v. Flores, 507 U.S. 292, 302 (1993)).  The proper level of generality for the description of the right being asserted is "the most specific level at which a relevant tradition protecting, or denying protection to, the asserted right can be identified."  Michael H. v. Gerarald D., 491 U.S. 110, 127 n.6 (1989).  In their FAC, Plaintiffs allege the violation of a number of constitutional "rights."  Plaintiff's second and fourth claims for relief allege the most extensive set of violations as follows:

(a)  the right not to be deprived of liberty without due process of law by misleading a Family Court Judge to remove C.M.R. from the custody of

[Fox].

(b)  the right to be free from reasonable interference with parent- child relationships by misleading Family Court judges to remove C.M.R. from the custody of [Fox].

(c)  the right to equal protection under the law by not acting on what was determined by CWS and TCSD to be false allegations of child sexual and physical abuse and neglect made against [Fox] by [Rogers] when they, in fact, did act against [Fox] when they wrongly determined that [Fox] had made false allegations of sexual abuse against [Rogers].

(d)  the right not to be deprived of liberty by removing C.M.R. from the custody of [Fox].

(e)  the right to be free from unreasonable interference with parent-child relationships by removing C.M.R. from the custody of [Fox].

Doc. # 46 at 47:26-48:26.  Plaintiff's third claim for relief alleges more simply that "[t]he separation of parent from child intrudes upon a fundamental liberty interest protected by the substantive due process provisions of the Fifth (5th) and Fourteenth (14th) Amendments to the Constitution of the United States."  Doc. # 46 at ¶ 219.  And "[f]or more than a year, as a result of Defendants' acts, C.M.R. was removed from [Fox's] custody and the two were deprived of their liberty and parent-child relationships."  Doc. # 46 at ¶225.

Applying the advice from Hutchins and Michael H., the court finds that the claims alleged by Plaintiffs under 42 U.S.C. § 1983 and §1985 are based on violation of two constitutional rights.  The first right that is alleged to have been violated is a right pertaining to the allocation of physical custody between the parents of a child in a contested custody dispute.  The essence of Plaintiffs' claims relating custody is that the separation of parent from child (in the context of a division of custody between parents) intrudes upon a fundamental liberty interest protected by substantive due process under the Fourteenth Amendment.  Behind Plaintiffs' claims based on the removal of C/M.R. from Fox's custody is the notion that the allocation of physical custody of a child by a parent is protected under the liberty prong of the Fourteenth Amendment in the context of a custody dispute between the parents of the child.  Further, Plaintiff's FAC implies that that the right alleged to have been violated – the right to parental custody – is fundamental within the meaning of the Fourteenth Amendment.

The second right claimed to have been violated is a right to unimpeded access to evidence material to the family court's determination of disputed custody issues. To the extent a right can be asserted that guarantees unimpeded access to material evidence, the court concludes that right would be found under the Fourteenth Amendment procedural due process.

### 1. Fourteenth Amendment Substantive Due Process

The Due Process Clause of the Fourteenth Amendment establishes a parent's "liberty interest in the 'companionship, care, custody and management of [their] children.'" James v. Rowlands, 606 F.3d 646, 651 (9th Cir. 2010) (quoting Lassiter v. Dep't of Soc. Servs, 452 U.S. 18, 27 (1981). The liberty interest in the care, companionship, custody and management of children has two aspects; a custodial aspect that has to do with the allocation of physical custody and visitation between the parents and the aspect of participation of a parent in decisions regarding the child, which is generally not subject to allocation between parents but is a right of both parents simultaneously. See James, 606 F.3d at 651 (noting the continuing right of the non-custodial parent to participate in decisions involving care, custody and management of the child). With regard to physical custody of a child in the context of the divorce or separation of the parents, it is elementary that the physical placement of a child with one of its parents necessarily deprives the other parent of the physical presence of the child during the time it is with the other parent.

In Troxel v. Granville, 530 U.S. 57 (2000), the Supreme Court applied strict scrutiny in invalidating a state law that provided for visitation rights to non-parents of a child. The Troxel court held that the right of a biological parent to custody of their children was a fundamental right in the context of competing requests for visitation rights by grandparents or other non-parents and the state statute did not meet strict scrutiny standards in its intrusion onto the custodial rights of the biological parent. However, as a California appellate court has noted, no court has applied strict scrutiny to the review of the allocation of custody *between biological parents*. See Enrique M. v. Angelina V., 174 Cal.App.4th 1148, 1154 (4th Dist. 2009) (no court "of which we are aware, has ever applied the strict scrutiny standard to a custody or custody-

related dispute between two parents of a minor child").  "[I]nsofar as disputes between natural parents are concerned, while parents do have a natural right to care and custody of their children this does not mean that parents have a 'fundamental' right to 'equal placement periods' after divorce."  Id. at 1157 (quoting with approval, Arnold v. Arnold , 679 N.W.2d 296, 299 (Wis.App. 2004)).  "We agree with the *Arnold* court that *Troxel*, which involved nonparental visitation, does not compel courts to a apply substantive due process analysis in resolving custody or custody related disputes *between parents*."  Id. (italics in original).

District courts have recognized that the legal standard properly used by California courts in making child custody and visitation decisions is the "best interests of the child" standard.  See Monteagudo v. Alksne, 2011 WL 3903226 (S.D. Cal. 2011) at *1 (citing In re Marriage of Brown & Yana, 37 Cal.4th 947, 955-956 (2006) ("Brown").  The "best interests of the child" standard requires consideration of "all relevant factors, including the child's health, safety, and welfare, any history of abuse by one parent against any child or the other parent, and the nature and amount of the child's connection with the parents."  Brown, 37 Cal. at 956.  Obviously, custody disputes decided under the best interests of the child standard do not turn on any single piece of evidence or information.  Equally obviously, the allocation of physical custody between parents may be uneven and may be changed upon reconsideration of the multiple factors that inform custody decisions without violation of any fundamental right of either parent.  In short, case authority clearly establishes that there is no particular amount of physical custody of a child that is constitutionally guaranteed by any particular factor at any particular time.  It follows that a parent of a minor child who comes out on the short end of the custodial stick following a family court adjudication of a custody dispute does not suffer a cognizable constitutional deprivation resulting from that decision so long as some provisions for visitation and full participation in decision making for the benefit of the child remain available.

The facts of this case indicate Fox was never denied all visitation and physical custody rights for any period of time nor have any facts been alleged to show that she suffered any denial of her right to participate in the making of decisions regarding C.M.R. welfare.  Plaintiffs'

central complaint is that access to facts in the custody of TCSD concerning the presence of child pornography on Rogers' computer were not timely made available for proceedings in the Family Law court.  The court concludes no constitutional violation arises from this fact because the Family Law Court knew of the allegation of the presence of child pornography and, given the multiplicity of factors the Family Court was required to consider, there is no constitutional guarantee that the timely production of all the evidence requested would have resulted in a different determination of the division of custody between Fox and Rogers.  In short, the court finds Fox did not suffer a constitutional violation as a result of the Family Court's decision because she had no constitutionally guaranteed right to a particular outcome.

The federal claims in Plaintiffs' FAC also appear to allege that C.M.R suffered harm that is cognizable as a constitutional violation as a result of being placed in Rogers' physical custody.  The "[f]ailure to investigate or intervene when child abuse is suspected can subject a [state jurisdiction] and its employees to liability." Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1125 (9th Cir. 1989).  However, the facts alleged by Plaintiffs fail to support the contention that there was a failure to investigate or intervene.  Rather, the allegations of both parties makes it clear that there were multiple reports by both parties, multiple investigations and various adjustments in custody arrangements over the entire period of time C.M.R.'s custody was being disputed.  The timeline provided by Defendants indicates that Physical custody of C.M.R. was adjusted between Rogers and Fox as various reports, recommendations, and other pieces of evidence became available and were considered by Family Law judges.  See Doc. # 161-1 at 16:9-20:25.  The gist of Plaintiffs' factual allegations regarding the response by officials to the reports of child molestation or abuse is not that response was absent, but that it was improperly carried out, was carried out untimely, or that the complaints and the results of investigation were given improper weight, were misinterpreted, or that Fox was improperly accused of over-reporting or that her reports were given less consideration that was warranted.

While there has been some debate as to what level of care is required under the Fourteenth Amendment, it is clear that "[m]ere negligence of lack of due care by state officials

in the conduct of their duties does not trigger the substantive due process protections of the Fourteenth Amendment and therefore does not state a claim under section 1983." Woodrum, 866 F.2d at 1126. To the extent that Plaintiffs' substantive due process claim can be held to be distinct from their claim for state created danger, there is no basis to presume that anything less than a showing of deliberate indifference is necessary to raise a constitutional claim based on the Defendants' alleged failures investigate allegations of child abuse or to give proper weight and consideration to reports that were made. The court finds that Plaintiffs have failed to show the Defendants acted with the requisite level of culpability in addressing Fox's claims. The court therefore finds that C.M.R. did not suffer a constitutional violation from being placed at times in Rogers' custody for the same reasons the court has determined that that Fox did not suffer any constitutional violation. Plaintiffs have not provided any evidence or argument that, upon presentation of some particular quantum of evidence concerning the allegation of mistreatment at the hands of one parent, the other parent is *constitutionally entitled* to physical custody of their child to the exclusion of the allegedly offending parent.

　　　While Plaintiffs have complained of what they assert was the effect of Defendants actions on the determinations of the Family Law judges, they have failed to produce any argument to show that the conclusion of a Family Law Judge, whether favorable or unfavorable, has a constitutional dimension. As noted above, a child who is the object of a custody battle between biological parents is entitled to proceedings that use the "best interest of the child' legal standard. There is no evidence that the Family Court Judges in this case ever strayed from this standard. That a family law court may fail in some particular instance to achieve what may, in retrospect, be the optimal determination of physical custody does not give rise to a constitutional claim. The fundamental harm alleged by Plaintiffs is encapsulated in a sentence that is repeated in Plaintiffs' third and fourth claims for relief: "For more than a year, as a result of Defendants' acts, C.M.R. was removed from Fox's custody and the two were deprived of their liberty and parent-child relationships." Doc. # 46 at ¶¶ 225, 236. The court finds that Plaintiffs have alleged no facts to show that the parent child relationship between Fox and C.M.R. was ever

interfered with to the extent that could possibly give rise to a violation of either's rights under substantive due process.  While there is a constitutionally protected right to meaningfully participate as a parent in the life of one's child, there is no constitutional right known to this court to a particular allocation of physical custody of a child between two parents in a custody dispute.  It is Plaintiffs' burden to show that a constitutional right to some particular amount of physical custody existed and was denied.  Plaintiffs have failed to carry this burden.

### 2. Procedural Due Process

Plaintiffs' FAC is ambiguous in its invocation of Fourteenth Amendment rights.  To the extent Plaintiffs intended to assert the violation of procedural due process rights at all, it would appear that the allegation centers around two issues; the failure of the CWS Defendants to adequately discharge investigatory duties imposed by California statutes, and the delay of production of evidence in the custody of the Sheriff's Department regarding the presence of images constituting child pornography on the hard drive of Rogers' computer.

The court interprets Plaintiffs' FAC to possibly allege a procedural due process violation based on the alleged failure of Defendants to adequately carry out state-mandated investigation, evaluation or assessment, or to have inaccurately represented such evaluations or assessments in hearings before a family law judge.  Such claim must fail because no new constitutional due process right is created when a state enacts a law "designed to protect an existing constitutional right."  James, 606 F.3d at 657.  Arguably, the procedural requirements imposed by California statutes on agencies charged with protecting child welfare exist, at least in part, for the purpose of safeguarding the life and liberty interests of the parents and children involved.  However, the violation or inadequate performance of the mandated procedures does not create a separate right where the harm suffered does not, itself, implicate a constitutional right.  Since the allocation of child custody unequally between biological parents does not give rise to a substantive due process violation, pursuant to James, the violation or substandard performance of any of the statutory duties resulting in a distribution of *physical* custody that disadvantages one parent to the benefit of the other does not give rise to an independent constitutional claim so long as the

fundamental right to participate meaningfully in the life of the child is not unduly interfered with.

A second basis for a claim of procedural due process violation may be inferred from Plaintiffs' allegations of civil conspiracy pursuant to 42 U.S.C. § 1983, and conspiracy to violate equal protection rights pursuant to 42 U.S.C. § 1985(2).  In order to survive Defendants' motion for summary judgment as to a claim for civil conspiracy under section 1983, Plaintiffs must show there remains an issue of material fact as to whether (1) there was an agreement or meeting of the minds between the alleged conspirators, (2) to violate a constitutional right of the plaintiff. Fonda v. Gray, 707 F.2.d 435, 438 (9th Cir. 1983).  "[M]ere acquiescence" of one party to the demands of another is insufficient to prove conspiratorial intent.  Id.  Further, the conspiracy to violate the constitutional right of the plaintiff must result in an actual depravation of a constitutional right.  See Woodrum, 866 at 1126.  Mere allegation of a conspiracy, without material facts to show a meeting of minds to accomplish the constitutional violation, are insufficient to support a claim for civil conspiracy.  Id.

To the extent Plaintiffs may have intended to assert a procedural due process claim based on the allegation that the alleged civil conspiracy between the Defendants rendered the process that Fox and Rogers participated in constitutionally inadequate, any such claim fails for two reasons.  First, Plaintiffs have failed to allege any evidence to show that there was a meeting of the minds between any of the Defendants.  It is not disputed that Rogers approached Ron Castaneda for the purpose of getting the latter to run a criminal background check on Fox's then-current boyfriend and that Ron provided the requested background check.  However, there are no facts alleged to suggest that the production of the background check was anything other than a "favor for a friend;" or mere acquiescence to a request.  Plaintiffs' FAC alleges that Ron Castaneda entered into a conspiracy with Leticia Castaneda on the basis of their relationship.  However, Defendants point out that Leticia Castaneda is only related to Ron by her marriage to Ron Castaneda's cousin.  Plaintiffs present no material facts to rebut Defendants' allegation that Ron and Leticia are not closely acquainted and that they have never spoken to each other

regarding any matters pertaining to this case.  Plaintiffs also point to the declaration of expert witness Ann Haralambie to support their allegation of conspiracy against the Attorney Defendants.  Notwithstanding Defendants' contention that expert opinion is insufficient to establish the elements of a claim for relief; the court has reviewed Haralambie's Declaration, Exhibit #6, Doc. # 208-6, and finds that it does not support the allegation of conspiracy against the Attorney Defendants.  Haralambie's declaration criticizes County Counsel's priorities in preventing the release of the requested information without a clear order from the Juvenile Court and calls into question the presumed motivation of the Attorney Defendants, speculating that a trier of fact could find that they sought to "cover up the wrongdoing by the CWS workers,[or]  to protect the County from potential liability. . . ."  Id. at 6.  These criticisms, whether accurate or not, do not suffice to show a conspiratorial meeting of the minds with the intent to deprive anyone of a constitutional right.  To the extent Plaintiffs have alleged any meeting of the minds between any other alleged conspirators, such allegations are without any material facts at all.

Second, based on the above discussion, the court has found that there was no actual violation of a constitutionally protected right.  To the extent Plaintiffs may have intended to allege they were constitutionally entitled to process unhindered by conspiracy to deny timely production of evidence that claim fails because, as noted above, the process of adjudication of disputes over physical custody of a child does not produce an outcome (the allocation of physical custody) that can be the basis of a constitutional claim absent a showing of deliberate indifference.  Pursuant to James, a claim of interference in the process of adjudication does not rise to the level of constitutional violation unless the right being protected by the process is a constitutional right.  Since the right in this case – the allocation of physical custody of a biological child – is not a right with constitutional implications , the processes pertaining to that right do not have independent constitutional significance.

Plaintiffs also assert a claim for conspiracy in violation of 42 U.S.C. § 1985.  Section 1985 "establishes five classes of prohibited conspiracy."  Kush v. Rutlege, 460 U.S. 719, 724 (1983).  Of these five categories, two – the second clause of subsection 1985(2) and subsection

1985(3) – pertain to proceedings in state courts.  Id. at 725.  The second clause of subsection

1985(2) makes it unlawful for "two or more persons [to] conspire for the purpose of impeding,

hindering, obstructing, or defeating, in any manner, the due course of justice in any State or

Territory, with intent to deny to any citizen the equal protection of the laws."  42 U.S.C. §

1985(2).  Subsection 1985(3) prohibits conspiracies "aimed at interfering with rights that are

protected against private, as well as official, encroachment."  Buchanan v. Buchanan, 42 F.3d

1389, 1994 WL 680992 (C.A.9 (Wash.) 1994) at *4.  Plaintiffs do not specify the applicable

subsection, but a review of the facts alleged by Plaintiffs and the language of Plaintiffs' third

claim for relief indicate the claim is alleged pursuant to 42 U.S.C,§ 1983(2).  Both categories of

conspiracy aimed at obstructing justice in state courts require an "intent to deprive their victims

of the equal protections of the laws," Kush, 460 U.S. at 725, which means there must be some

"racial or perhaps otherwise class-based, invidiously discriminatory animus behind the

conspiratorial action."  Id. at 726.

Plaintiffs claim pursuant to section 1985 alleges that Fox was denied due process because

of invidious discrimination against her on account of her gender.  As an initial matter, neither

party has addressed the issue of whether a single parent in a custody proceeding can be a

member of a protected class for equal protection purposes on the basis of gender.  While

authority on this issue is admittedly sparse, district courts that have addressed the issue appear to

have come to the conclusion that the classification of single parent of either gender in a custody

proceeding is not a member of a protected class.  See Borlawsky v. Town of Windham, 115

F.Supp.2d 27, 29 (D. Maine 2000) (female parent in custody dispute not a protected class);

Nielson v. Legacy Health Sys., 230 F.Supp.2d 1206, 1211 (D.Or. 2001) (divorced fathers

seeking custody not a protected class).  Given the nature of child custody disputes involving, as

they most commonly do, one party of one gender opposing the other party of the other gender;

the refusal of district courts to recognize gender as the basis for membership in a protected class

for equal protection purposes seems logical.  Because evidence of any conspiracy is lacking

based on the absence of facts indicating a meeting of minds for the purpose of depriving

Plaintiffs of any constitutional right, the court will not spend additional time or effort determining if gender should be the basis for a protected class in the context of child custody disputes.  Should the issue be taken up for appellate review, however, the issue is one that could benefit from review.

Even if gender could be considered a basis for Fourteenth Amendment protection in the context of a parental custody dispute, Plaintiffs' claim pursuant to section 1985(2) would fail both because of Plaintiffs' failure to allege facts supporting a conspiracy as discussed above, and because of Plaintiffs' failure to allege facts from which a trier of fact could infer gender-based discrimination.  To support their claim that the alleged conspiracy against Fox was motivated by invidious discrimination based on gender, Plaintiffs have collected what they consider evidence of gender bias by the CWS workers in a declaration by Plaintiffs' attorney, Seth Goldstein, which is set forth at Docket Number 205-2 ("Goldstein Dec.").  The evidence compiled in the Goldstein Dec. is of two types; instances where the CWS Defendants asked questions of Fox that they did not ask Rogers, particularly questions regarding past sexual assault, and instances where the CWS Defendants appear to have given credence to statements by Rogers that they did not give to Fox's statements.  What is lacking from the Goldstein Dec. is any indication that there is an institutional bias in favor of or against either gender.

That, in a particular instance, a CWS worker may find it relevant to ask questions that are gender guided does not mean that the worker or process is biased.  Gender equality does not mean that interviews of two parents must be restricted to the same questions for both parents.  Similarly, when a CWS worker forms an opinion or impression of the relative reliability of one parent's narrative over that of the other parent, that opinion or impression is not unlawful; it is simply part of the process of sorting out facts to recommend actions in the best interests of the child.  The fact that Fox's narrative may have been given less credence than Rogers proves nothing with regard to gender bias without additional evidence that points to a systemic bias.  The evidence proffered in the Goldstein Dec. merely establishes that, presuming the accuracy of the allegations set forth, the CWS Defendants found Rogers' narrative of pertinent facts more

credible than Fox's.  In doing so, the CWS Defendants did not impair Fox's right to equal protection.

The court concludes that Plaintiffs' have failed to show the existence of any material fact that would entitle them to relief on a procedural due process claim.

## II. Supplemental Jurisdiction over Plaintiff's State Law Claims

The court has found that Defendants have adequately demonstrated the absence of any material fact as to their liability with regard to Plaintiffs first, third and fourth claims for relief. Because the court has found that Plaintiffs have failed to allege facts showing they were denied any right protected by the Constitution or federal law, Plaintiffs' second claim for relief based on municipal liability is also subject to summary adjudication.  In summary, the reasons for this are that Plaintiffs have failed to set forth facts to show that Plaintiffs suffered the injury of any interest protected by the Fourteenth Amendment, and have failed to set forth facts to show that there was ever a meeting of the minds to deprive Plaintiff of any constitutionally guaranteed right.  The court is mindful that a portion of the court's opinion, particularly the portion of the opinion finding that Plaintiffs have failed to show they suffered the violation of any interest protected by the Constitution or laws of the United States, has not been addressed by the parties. For that reason, the court will issue this opinion in the form of a proposed order giving the parties the parties the opportunity to argue those portions of this opinion that they feel have not been thoroughly explored or that are legally incorrect.

What remains to be decided is the court's exercise of jurisdiction over Plaintiffs' state law claims.  Pursuant to Rule 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims where "the district court has dismissed all claims over which it has original jurisdiction."  Id.  "With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. See [F.R.C.P.] §§ 1367(a), (c).  A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."  Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009).  Generally, the

exercise of jurisdiction over state law claims when all federal claims have been dismissed should be the exception, not the rule.  See United Mineworkers v. Gibbs, 383 U.S. 715, 726-727 (1966) (exercise of supplemental jurisdiction should be rare).  The decision to exercise supplemental jurisdiction over pendant state law claims is informed by the values of judicial economy, convenience, fairness and comity.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (citing values to be considered from Gibbs).

Of the values district courts are instructed to consider, the value of comity looms largest by far in this case.  The state law claims in this action arise out of decisions made by the Tulare County Family Law Court concerning the allocation of physical custody over C.M.R.  Family law is "an area that has long been regarded as a virtually exclusive province of the States." Sousa v. Iowa, 419 U.S. 393, 304 (1975).  Fundamentally, Plaintiffs' state law claims allege the Family Law Court issued erroneous decisions because it was misled by the actions of the Defendants.  It is difficult to see how this court could provide relief to Fox under the state law claims without at least impliedly finding that certain Family Law Court decisions were erroneous.  "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, [the] *Rooker-Feldman* [doctrine] bars subject matter jurisdiction in the federal district court."  Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003).  Although this action is nominally against Defendants who where participants in the proceedings before the Family Law Court, this case would not have arisen were it not for the rulings of the Family Law court, which denied Fox the physical custody of C.M.R. that she sought.

Along the same lines, the court notes its own discomfort with the parties' evident presumption that proceedings are not ongoing in state court because of the death of Rogers during the pendency of this case.  Were there any matters still pending in the state court, this court would be required to abstain pursuant to Younger v. Harris, 401 U.S. 37 (1971).  The primary policy purpose behind Younger abstention and Rooker-Feldman doctrine is avoid unnecessary conflict between state and federal governments.  United States v. Morros, 268 F.3d

695, 707 (9th Cir. 2001).  Neither party has raised the issue of abstention and the court need not decide the matter to reach a conclusion regarding its exercise of supplemental jurisdiction over the pendent state law claims.  The state law claims in this case lie in the middle of a legal area – California family law – that this court is convinced it should assiduously avoid absent some extraordinary and compelling reason.  This case presents no such extraordinary or compelling reason and, consequently, it is this court's intention to decline to exercise subject matter jurisdiction over Plaintiffs' pendent state law claims upon the entry of judgment against Plaintiffs on their federal claims.

### CONCLUSION AND ORDER

In consideration of the fact this court has reached the conclusion that Defendants are entitled to summary judgment as to each of Plaintiffs' federal claims on legal grounds that have largely not been addressed by the parties, the court hereby ORDERS that Plaintiffs shall SHOW CAUSE why summary judgment should not be awarded to Defendants as to the first, second, third and fourth claims for relief on the grounds set forth above.  Plaintiffs shall file and serve their response to this order to show cause not later than fourteen (14) days from the date of service of this order.  Defendants shall file their opposition, if any, not later than fourteen (14) days following the service of Plaintiff's response.  If Plaintiffs fail to file a response to this order within the time period allotted, Defendants shall so notify the court and judgment will be entered in accordance with this order.

IT IS SO ORDERED.

Dated:   July 24, 2014   _____

_____SENIOR  DISTRICT  JUDGE